Jonathan M. Saffer (AZ Bar No.022004)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, AZ 85701-1630
Telephone: (520) 882-1200
Facsimile (520) 884-1294
E-mail: jmsaffer@swlaw.com
Attorney for Alliance Bank of Arizona

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>MCMAHON PROPERTIES, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 4:14-bk-00092-BMW<br><br>**ALLIANCE BANK OF ARIZONA'S MOTION TO EXCUSE RECEIVER'S TURNOVER OF THE PROPERTY** |

Pursuant to 11 U.S.C. § 543(d)(1), secured creditor Alliance Bank of Arizona ("Alliance"), moves the Court for relief from stay and to excuse the Receiver from turning over property of the estate to the debtor, McMahon Properties, LLC ("Debtor"). In a state court action, Alliance sought an order appointing the Receiver based on Debtor's default under the Loan Documents and its failure to secure the Property, defined herein. The Receiver was appointed by the Superior Court of the State of Arizona in Pima County to remedy these issues and control and operate the Property. That appointment occurred December 9, 2013. Debtor filed the present bankruptcy on the eve of the trustee's sale, solely to avoid foreclosure. Debtor related entities are leasing space at the subject Property, however these operating businesses are not paying rent and not accounting for misappropriated rent payments. Debtor's failure to turn over rents and to account for the missing rents will cause the creditors of the Debtor's estate to suffer irreparable harm. Based on all of the foregoing and the reasons set forth below, excusing turnover of the Property is in the best interests of the creditors.

//

//

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS

### A. THE LOAN TRANSACTION

1. On or about November 20, 2008, Debtor executed in favor of Alliance a certain "Promissory Note" evidencing a loan by Alliance to Debtor in the principal amount of $6,000,000.00. *See* Exhibit 1. Note, Exhibit 1; Deed of Trust, Exhibit 2; UCC Filings, Exhibit 3.

2. Alliance holds a valid, perfected first priority security interest in the subject real property located in Tucson, Arizona, and more particularly described in Exhibit A attached to the Deed of Trust (the "Property"). Exhibit A to Exhibit 2.

3. The Property conveyed in the Deed of Trust includes, among other things, the real property described in Exhibit A attached thereto, together with "any and all buildings and other improvements now or hereafter erected," "easements," "leases," "rents," and all other property interests, whether real, personal, tangible or intangible as more specifically defined and/or described in the Deed of Trust. Exhibit A to Exhibit 2.

4. By and through Article II of the Deed of Trust, Defendant "absolutely and irrevocably" assigned to Lender all Leases and Rents, as defined therein, from the Property and conferred upon Lender the "right, power and authority to collect the Rents."

### B. THE DEFAULTS

5. Debtor defaulted under the Loan by failing to make the monthly payments as required under the Loan Documents.

6. Plaintiff provided Notice of Payment Default and Demand letters to Debtor by letters dated February 5, 2013; July 17, 2013; July 29; 2013; August 14; 2013; August 29, 2013; September 20, 2013; October 2, 2013; and November 5, 2013, notifying Debtor that because of the Default, the debt was fully due and payable. A true and correct copy of the letters are attached hereto as Exhibit 4 and incorporated herein by this reference.

7. To date and despite demand, Debtor has refused to pay to Alliance all amounts due under the Loan Documents.

8. On October 7, 2013, Alliance recorded a "Notice of Trustee's Sale" for the Property with Pima County Recorder at Sequence No. 20132800301. A true and correct copy of this notice is attached hereto as Exhibit 5 and incorporated herein by reference.

9. As of November 27, 2013, the outstanding principal balance due under the Loan Documents is $5,269,666.74. Interest, fees, costs, and attorneys' fees and costs have accrued and continue to accrue under the Loan Documents.

### C. THE RECEIVERSHIP

10. Pursuant to the Deed of Trust, Alliance was entitled to seek appointment of a receiver upon the occurrence of an event of default.

11. On November 27, 2013, Alliance filed a Verified Complaint for Appointment of Receiver (the "Complaint") in the Arizona Superior Court of Pima County (the "State Court") commencing Case No. CV-20136564 (the "State Court Action").

12. On November 27, 2013, Alliance filed an "Application for Appointment of Receiver" (the "Application") and the "Affidavit in Support of Appointment of Receiver" (the "Affidavit").

13. On December 9, 2013, the State Court entered the "Order Appointing Receiver" (the "Receivership Order"), by which Resolute Commercial Services ("Resolute") was appointed as the Receiver (the "Receiver") over the "Property," as that term is defined in the Receivership Order. A true and correct copy of the Receivership Order is attached hereto as Exhibit 6, and incorporated herein by this reference.

### D. THE RECEIVER SHOULD REMAIN IN POSSESSION AND CONTROL OF THE PROPERTY

14. The Property is currently leased by, among other tenants, McMahon's Prime Steakhouse, which is owned (at least in part) and operated by Robert McMahon, a principal of the Debtor. McMahon's Prime Steakhouse is an operating business that is not paying any rent and further neither Debtor nor McMahon's Prime Steakhouse are

accounting for the unpaid rent.

15. Upon information and belief, Robert McMahon is a principal of at least one other entity that is leasing space at the center and, which is also not paying rent. The Debtor is also not accounting for this unpaid rent.

16. The Receiver was appointed to take possession of, operate and ensure the integrity of the Property, by performing, among other duties, collection of rents and revenue from the tenants.

17. If the Receiver is not allowed to remain on the Property to collect rents from all tenants and to account for the unpaid rents, Alliance may continue to suffer irreparable harm from the diminution in the value of its collateral. Further, all creditors will not be adequately protected.

### E. TRUSTEE SALE AND BANKRUPTCY PETITION

18. A trustee's sale was appropriately noticed for January 9, 2014.

19. On January 3, 2014 ("Petition Date"), Debtor filed for Chapter 11 bankruptcy protection.

## II. LEGAL ARGUMENT

### A. THE COURT SHOULD EXCUSE TURNOVER

Although 11 U.S.C. § 543(b)(1) obligates the Receiver to turnover the Property to the Debtors, § 543(d)(1) of the Bankruptcy Code gives this Court the discretion to excuse compliance with certain aspects of Section 543. Section 543(d)(1) provides that "[a]fter notice and hearing, the bankruptcy court may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors ....would be better served by permitting a custodian to continue in possession, custody, or control of such property." Further, in order for the Court to determine that compliance with Section 543(b)(1) may be excused, the Court must decide if the interest of the creditors would be better served by permitting the receiver to continue in possession of the property. *See In re Poplar Springs Apartments of Atl., Ltd.,* 103 B.R. 146 (Bankr. S.D. Ohio 1989). In this matter, as

Alliance is the largest creditor and the sole creditor with an interest in the Property, the question before this Court is really what is in the best interest of Alliance.

In deciding whether to excuse turnover, courts consider multiple factors, including (i) whether there is sufficient income to fund a successful reorganization, (ii) whether the property will be used by Debtor for the benefit of its creditors, and (iii) whether Debtor has mismanaged the property. *In re Orchards Village Investments, LLC*, 405 B.R. 341, 353 (Bankr. D. Or. 2009) (citing *Dill v. Dime Savings Bank, FSB*, 163 B.R. 221, 225 (E.D.N.Y. 1994)); *see also In re Uno Broadcasting Corporation*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994). Here, there is no question that the factors weigh in favor of excusing turnover and that the estate is better served by keeping the Receiver in place.

Prior to the Receiver being appointed, Debtor failed to turn over all rents to Alliance and has failed to account for the unpaid rents. Debtor's principal Robert McMahon, is solely responsible for this, and is subject to a conflict of interest. For example, on information and belief, Mr. McMahon has not been requiring his name-sake restaurant, which he operates, to pay rent, and has been commingling rents from other tenants with receipts from restaurant operations and using the proceeds to support the operations of the restaurant. Despite requests from the receiver, Mr. McMahon has failed to account for past rents from third party tenants, and has not provided an accounting of rents owed by the restaurant or other insider tenants. Nor has the Mr. McMahon provided any reconciliation of his operating accounts as far as how rents from third party tenants were used.

The Receiver was appointed, among other reasons, to take custody and control of the Property and to collect the rents due on the Property from third party tenants, and to secure these rents for the Lender, Alliance. If Mr. McMahon is allowed to retake possession of the center and its operating accounts, Alliance is concerned that he may not require McMahon's Steakhouse to pay past due rents and/or he will recommence the practice of commingling accounts and using rents from third party tenants to support his restaurant.

The Debtor's conduct warrants keeping the Property in the possession and control of the Receiver, who is an agent of the Court and will act for the benefit of all parties. Based on the mismanagement and misappropriation, there is sufficient reason to believe that Debtor would not operate the Property for the benefit of all of its creditors. If possession of the Property returned to Debtor, there is credible concern that the Debtor would continue to abscond with the rents, or continue failing to account for the rents. Indeed, the very filing of this case was not intended to benefit the creditors or the Debtor's estate. Rather, it is patently clear that these proceedings were only filed to avoid foreclosure. Debtor's Chapter 11 Bankruptcy Petition was filed on January 3, 2014, six days prior to the trustee's sale. Debtor's Petition was filed in bad faith and solely meant to avoid the trustee's sale. Given all of the foregoing, the Court should enter an order excusing the Receiver from complying with 11 U.S.C. §§ 543(a), (b), and (c).

Pending the resolution of this Motion, the Receiver is entitled to retain possession of the Property and continue to operate the same. *See In re Petters Co.*, 401 B.R. 391, 408 (Bankr. D. Minn. 2009); *see also In re Watkins*, 63 B.R. 46 (Bankr. D. Colo. 1986).

### B. IN THE ALTERNATIVE, TURNOVER SHOULD BE CONDITIONED ON ACCOUNTING AND REPAYMENT OF MISAPPROPRIATED AND UNPAID RENTS.

Although this Court has the discretion to excuse Receiver's obligation to turn over the Property, in the alternative, and at a minimum, the Court should: (1) require Debtor to immediately account for all third party rents, as well as unpaid rents from insider tenants, and (2) condition entry of a turnover order on repayment of (a) any past due rents misappropriated and used to support McMahon's Prime Steakhouse restaurant operations; and (b) all past-due and unpaid rent from any insider tenants including McMahon's Prime Steakhouse.

### III. CONCLUSION

For the foregoing reasons, this Court should exercise its authority to excuse the Receiver from complying with 11 U.S.C. §§ 543(a), (b), and (c). In the alternative, this

Court should order the Debtor to account for the all rent on the Property, including the rent due from the Debtor related entities, and deposit the rents into a Debtor-in-Possession Bank Account. Alliance further reserves its rights to supplement this motion should it determine through further investigation that other grounds exist to warrant stay relief.

RESPECTFULLY SUBMITTED this 15th day of January, 2014.

SNELL & WILMER

By s/Jonathan M. Saffer
Jonathan M. Saffer
One South Church Ave
Suite 1500
Tucson, AZ 85701-1630
Attorney for Alliance Bank of Arizona

Copy of the foregoing served electronically
or by first class U.S. Mail this 15th day of
January, 2014 to the following:

Scott D. Gibson
Law Office of Scott D. Gibson PLLC
6303 E. Tanque Verde Road, Suite 210
Tucson, AZ 85715
ecf@sdglaw.net

Renee Sandler Shamblin
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003
Renee.s.shamblin@usdoj.gov

Alissa A. Brice
Ryley Carlock & Applewhite
One North Central Avenue, Suite 1200
Phoenix, AZ 85004
abrice@rcalaw.com

Creditor Mailing Matrix (attached)

*s/Clarrissa Palma*