Jonathan M. Saffer (AZB #022004)
Jill H. Perrella (AZB #026270)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, AZ 85701-1630
Telephone: (520) 882-1200
Facsimile (520) 884-1294
E-mail: jmsaffer@swlaw.com
         jperrella@swlaw.com
*Attorneys for Alliance Bank of Arizona*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In Re:<br><br>MCMAHON PROPERTIES, L.L.C.,<br><br>Debtor. | Proceedings Under Chapter 11<br><br>Case No. 4:14-bk-00092-BMW |
| ALLIANCE BANK OF ARIZONA,<br><br>Movant,<br><br>v.<br><br>MCMAHON PROPERTIES, L.L.C.,<br><br>Respondent. | **ALLIANCE BANK OF ARIZONA'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY; OR, ALTERNATIVELY, REQUEST FOR ADEQUATE PROTECTION**<br><br>(Real Property, Personal Property, Income, and Rents) |

Alliance Bank of Arizona ("Alliance"), secured creditor in the above-captioned Chapter 11 bankruptcy case ("Bankruptcy Case") of McMahon Properties, L.L.C. ("Debtor"), pursuant to 11 U.S.C. § 362(d), hereby respectfully requests that this Court enter an order terminating the automatic stay of 11 U.S.C. § 362(a) to allow Alliance to exercise any and all of its available state and/or federal rights and remedies in and to its collateral, including but not limited to: (i) certain real property owned by the Debtor; (ii) any rents, leases and proceeds; and (iii) any and all furniture, fixtures and equipment related to the real property. In the alternative, Alliance requests that the Court enter an order requiring the Debtor to commence adequate protection payments and otherwise comply with 11 U.S.C. § 362(d)(3).

This Motion is supported by the record in the entire Bankruptcy Case, the *Declaration of Warren Forsythe in Support of Alliance Bank of Arizona's Motion for*

*Relief from the Automatic Stay* ("<u>Declaration</u>") filed concurrently herewith, and by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   BACKGROUND AND PROCEDURE**

   **A.   The Loan Documents**

   1.   On or about November 20, 2008, Debtor executed in favor of Alliance that certain "Promissory Note" (the "<u>Note</u>") evidencing a loan by Alliance to Debtor in the principal amount of $6,000,000.00 together with interest and other amounts as set forth therein (the "<u>Loan</u>"). A true and correct copy of the Note is attached hereto as **Exhibit A** and incorporated herein by this reference.

   2.   The Loan is secured by, among other things, that certain "Deed of Trust and Fixture Filing (With Assignment of Rents and Security Agreement)" dated November 21, 2008, executed by Debtor in favor of Alliance and was recorded on November 21, 2008, at Sequence No. 20082270419, Official Records of Pima County Recorder, Arizona (the "<u>Deed of Trust</u>"). The Deed of Trust granted a security interest to Alliance in, among other things, certain real and personal property described more specifically in Exhibit A of the Deed of Trust as the "Property" (hereinafter, the "<u>Property</u>"). A true and correct copy of the recorded Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by this reference.

   3.   In particular, the Property conveyed in the Deed of Trust includes, among other things, the real property described in Exhibit A attached thereto, together with "any and all buildings and other improvements now or hereafter erected," "easements," "leases," "rents" and all other property interests, whether real, personal, tangible or intangible as more specifically defined and/or described in the Deed of Trust.

   4.   By and through Article II of the Deed of Trust, Debtor "absolutely and irrevocably" assigned to Alliance, all Leases and Rents, as defined therein, from the Property and conferred upon Alliance the "right, power and authority to collect the

- 2 -
Case 4:14-bk-00092-BMW   Doc 56   Filed 02/24/14   Entered 02/24/14 10:14:14   Desc
Main Document   Page 2 of 12

Rents."

5. Pursuant to the terms of the Deed of Trust including Section 3.6 therein, to the extent the Property included any personal property interests subject to the Uniform Commercial Code ("UCC"), the Deed of Trust is effective as a financing statement filed as a fixture filing and granted to Alliance a security interest in such property.

6. On or about November 20, 2008, Robert B. McMahon and Danita A. McMahon ("Guarantors") executed a certain "Repayment Guaranty" ("Guaranty") in favor of Alliance and to its successors, endorsees and/or assigns. Among other things, Guarantors agreed that their obligations under the Guaranty constitute a guaranty of payment and not of collectability.

7. Pursuant to the Guaranty, Guarantors unconditionally and irrevocably, jointly and severally, guaranteed payment of the principal balance of the Loan, in accordance with its terms when due. A true and correct copy of the Guaranty is attached hereto as **Exhibit C** and incorporated herein by this reference.

8. The Note, Deed of Trust, Guaranty, and any and all other documents defining, modifying, or otherwise affecting the parties' rights and obligations with respect to the Loan are herein collectively referred to as the "Loan Documents."

**B.  Default Under the Loan Documents & Receivership Action**

9. Pursuant to Section 4.1 of the Deed of Trust, an "Event of Default" includes the failure of Debtor to pay any monetary amount when due under any Loan Document and the expiration of ten (10) days after written notice of such failure by Alliance.

10. Debtor failed to make the monthly payments as required under the Loan Documents. Alliance provided Notice of Payment Default and Demand Letters to Debtor on or about February 5, 2013; July 17, 2013; July 29, 2013; August 14, 2013; August 29, 2013; September 20, 2013; October 2, 2013; and November 5, 2013. The notices provided that the Loan was in default under the Loan Documents for, among other things, failure to make the required monthly Loan payments when due. True and correct copies

of these notices are attached hereto as **Exhibit D** and are incorporated herein by this reference.

11. To date and despite demand, the Debtor has refused to pay to Alliance amounts due under the Loan Documents.

12. Pursuant to Article IV of the Deed of Trust, upon an "Event of Default," Alliance is entitled to, among other things, accelerate the indebtedness, seek to have a receiver appointed, collect the "Rents," foreclose on the Property, proceed by suit to enforce the payment of the indebtedness, and to otherwise seek any other right or remedy available at law or equity.

13. On October 7, 2013, Alliance recorded a "Notice of Trustee's Sale" for the Property with the Pima County Recorder at Sequence No. 20132800301. A true and correct copy of this notice is attached hereto as **Exhibit E** and is incorporated herein by this reference. A Trustee's Sale of the Property was appropriately noticed for January 9, 2014.

14. On November 27, 2013, Alliance filed its Verified Complaint for Appointment of Receiver (the "Complaint") in the Arizona Superior Court of Pima County (the "State Court") commencing Case No. CV-20136564 (the "Receivership Action").

15. On December 9, 2013, the Court entered the "Order Appointing Receiver" (the "Receivership Order"), by which Resolute Commercial Services ("Resolute") was appointed as the Receiver (the "Receiver") over the Property.

**C. The Bankruptcy Case**

16. On January 3, 2014 ("Petition Date"), days prior to the scheduled Trustee's Sale of the Property, Debtor filed a petition for relief initiating the instant Bankruptcy Case.

17. Pursuant to, among other things, the Deed of Trust, Alliance possesses a valid, perfected, and enforceable first priority security interest in and to the Property.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

18. Alliance has received no payments from Debtor since September 2013.

19. As of the Petition Date, the outstanding balance due under the Loan Documents is $5,616,907.38, which is comprised of $5,269,666.74 of principal and $347,240.64 of accrued and accruing interest, late fees, default interest, attorneys' fees, and fees and costs due under the Loan Documents. Interest, fees, costs, and attorneys' fees and costs have accrued and continue to accrue under the Loan Documents. Additionally, property taxes related to the Property in the approximate amount of $340,000.00 are currently due and owing and continue to accrue. *See also* Dkt. No. 34.

## II. LEGAL ARGUMENT

### A. Sufficient "Cause" Exists to Terminate the Automatic Stay under 11 U.S.C. § 362(d)(1)

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for cause. The term "cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis. *Christianson v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citations omitted); see also *In re Delaney-Morin*, 304 B.R. 365, 369 (9th Cir. B.A.P. 2003). The Bankruptcy Code specifically identifies lack of adequate protection as cause for relief from the automatic stay, and the debtor has the burden to prove that the movant's interest in the property at issue is adequately protected. *Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1375 (9th Cir. 1987) (citations omitted). In fact, regardless of the type of "cause" asserted by the moving party, the debtor has the burden of showing that there is no such "cause" to terminate the automatic stay. *In re Ellis*, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985).

#### 1. Alliance Is Not Adequately Protected

Pursuant to 11 U.S.C. § 362(g)(2), the Debtor has the burden of proving that Alliance is adequately protected. The Debtor has not and cannot carry this burden under the present circumstances. In its Schedules, the Debtor lists the value of the Property as

"unknown." *See* Dkt. No. 34. The only evidence of value is contained in Alliance's appraisal dated November 23, 2013, which states that the as-is value of the Property as of that date was $5,840,000.00. A true and correct copy of the appraisal is attached hereto as **Exhibit F**. The total amount due to Alliance under the Loan Documents as of the Petition Date, together with the property taxes due on the Property, is higher than that value by over $100,000.00. Additionally, interest, fees, costs and taxes continue to accrue daily. An equity cushion is the traditional form of adequate protection. Without that cushion, Alliance bears any decrease in the value of the Property during these proceedings. Accordingly, Alliance's security interest in the Property is not adequately protected and relief from the automatic stay is appropriate.

### 2. The Debtor is Conducting Itself in Bad Faith and Using the Property to Benefit Insiders

Among the totality of circumstances that bankruptcy court can consider in deciding whether "cause" exists to lift automatic stay are how parties have conducted themselves, their good or bad faith, and their motives. *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006). "A debtor who does not act in good faith is not entitled to continue to enjoy the benefits, such as the automatic stay, afforded by the Bankruptcy Code." *Id.*; *see also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986); *In re Hurdle*, 11 B.R. 304, 306 (Bankr.E.D.Va.1981). Debtor acted in bad faith prior to the Petition Date (before the Receiver was appointed) by commingling funds from related entities and using rents from third party tenants to support non-paying insider tenants leasing space at the Property, rather than making Loan payments to Alliance. Due to this bad faith behavior, Alliance applied to have the Receiver put in place to take control of the Debtor's assets, to preserve, maintain, and lease the Property and to collect rents from tenants on the Property. Now that this Court has ordered the Receiver to turn over the Property back to the Debtor [*see* Dkt. No. 46] Alliance has renewed concerns over the Debtor's (mis)management of the Property and the possibility of further, post-petition bad faith tactics involving using Alliance's collateral (the Property and rents/income from the

- 6 -
Case 4:14-bk-00092-BMW    Doc 56    Filed 02/24/14    Entered 02/24/14 10:14:14    Desc
Main Document    Page 6 of 12

Property) to benefit insiders.

### 3. **The Debtor Cannot Reorganize**

"Cause" under 11 U.S.C. § 362(d)(1) also exists where there is no reasonable prospect of a debtor's reorganization. *See In re Ocean Beach Properties*, 148 B.R. 494, 498 (Bankr. E.D. Mich. 1992) (concluding that where the debtor fails to establish any reasonable possibility that it can confirm a plan, stay relief is appropriate). In this case, there is no reasonable prospect of reorganization. The Debtor's Schedules indicate its liabilities outweigh its assets by well over $6 million. *See* Docket No. 34. Further, the Property is not necessary for reorganization. The only way that the Property will be useful for reorganization is if it is sold for more than Alliance's secured claim, which the Debtor has not established it will be able to do. It is unlikely that there will be excess proceeds available for reorganization purposes, given the depreciating market and the Debtor's mounting property tax obligations. As such, the continued depreciation and lack of equity in the Property warrants a more expedient liquidation and relief from the stay.

Further, several of the Debtor's affiliated entities, which all appear to be operated by the same principal, have recently filed for Chapter 11 bankruptcy protection: *see In re Old Pueblo Grill, LLC* (Case No. 4:14-bk-01283-BMW); *In re McMahon's Steakhouse, LLC* (Case No. 4:14-bk-01281-BMW); *In re Metro Restaurants, Inc.* (Case No. 4:14-bk-01278-BMW); and *In re Metropolitan Grill, LLC* (Case No. 4:14-bk-01284-EWH). Several of these insider entities owe debts to the Debtor, and at least one is a tenant of the Debtor which is not currently paying rent and owes at least $35,000.00 in back rent. *See* Case No. 4:14-bk-01278-BMW at Dkt. No. 14; Case No. 4:14-bk-01281-BMW at Dkt. No. 10; Dkt. No. 46, p. 2 (minute entry order in which Debtor's counsel admits McMahon's Steakhouse is not paying rent). The Debtor's continued support of non-paying, bankrupt insider tenants is only a further obstacle to the Debtor's reorganization.

### 4. **The Debtor Is Not Making Post-Petition Payments to Alliance**

A debtor's failure to make regular post-petition payments to its secured creditor

constitutes "cause" under 11 U.S.C. § 362(d)(1). *See In re Delaney-Morin*, 304 B.R. at 370 n. 3; *In re Epic Capital Corp.*, 290 B.R. 514, 526 (Bankr. D. Del. 2003)("[i]t is well-established that a creditor can meet its initial burden of evidence production on the issue of 'cause' under § 362(d)(1) by introducing evidence of the debtor's failure to make post-petition installment payments on a secured debt."); *In re Watson*, 286 B.R. 594, 604 (Bankr. D.N.J. 2002)("The debtor's failure to make post-petition payments is sufficient cause to justify granting relief from the automatic stay."); *In re Elmira Litho, Inc*., 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994)("the creditor can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or has substantially failed, to make post-petition payments"). Debtor has not made any post-petition payments to Alliance. In fact, Debtor has failed to make any payments due under the Loan Documents since September 2013. This is despite the fact that Debtor's principal and insider entities continue to profit from the operation of the Property. Therefore, stay relief is appropriate.

**B.** **Termination of the Stay is Appropriate Under 11 U.S.C. § 362(d)(2) Because There is No Equity in the Real Property and the Debtor Cannot Demonstrate a Reasonable Likelihood of Reorganization**

As alternative grounds for relief from the automatic stay, Alliance alleges that the Debtor has no equity in the Property, and the Property is not necessary for an effective reorganization. Pursuant to 11 U.S.C. § 362(d)(2), a party in interest may be granted relief from the automatic stay if: (i) the Debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization. Once the movant establishes that there is no equity in the collateral "it is the burden of the Debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 44 U.S. 365, 375-376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization **that is in prospect**." *Id*. (emphasis added). Furthermore, there must be "a

reasonable possibility of successful reorganization within a reasonable time." *Id.* (citations omitted).

In its Schedules, the Debtor lists the value of the Property as "unknown." *See* Dkt. No. 34. The only evidence of value is contained in Alliance's appraisal dated November 23, 2013, which states that the as-is value of the Property as of that date was $5,840,000.00. *See* Exhibit F attached hereto. The total amount due to Alliance under the Loan Documents as of the Petition Date, together with the property taxes due on the Property, is higher than that value by over $100,000.00. Additionally, interest, fees, costs and taxes continue to accrue daily. Based on all of the foregoing, Alliance submits that the Debtor does not have any equity in the Collateral.

Secondly, as stated above, there is no reasonable possibility of reorganization that is in prospect, and the Property is not necessary for reorganization. Given the probable lack of equity, it is unlikely that the Debtor will be able to sell the Property for anything more than what is necessary to pay Alliance's secured claim, including interest, fees, costs, etc. Accordingly, the Debtor cannot meet the burden to show that the Property is necessary to its reorganization. Furthermore, the Debtor's prospect of a successful reorganization is speculative at best,[1] considering its lack of income, the fact that its liabilities far outweigh its assets, and that the Property continues to be occupied by non-paying, bankrupt insider tenants. Accordingly, Alliance should be granted relief from the automatic stay to liquidate its collateral in its own manner.

### C. **Alliance is Entitled to Adequate Protection Payments**

If the Court declines to award immediate stay relief, Alliance requests that the Court award Alliance adequate protection payments pursuant to 11 U.S.C. § 361 to protect against depreciation of its collateral. While the term "adequate protection" is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may

---

[1] This pleading is not meant to encompass all arguments Alliance may have against confirmation of a plan of reorganization filed by the Debtor. Alliance reserves all rights to file an objection to any disclosure statement or plan of reorganization filed by the Debtor and to supplement the arguments raised herein.

constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. 11 U.S.C. § 361; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). Debtor cannot offer replacement liens as it does not have sufficient unencumbered property. Nor can it offer any other form of protection that constitutes an "indubitable equivalent". Therefore, pursuant to *Mellor*, Alliance is entitled to receive periodic cash payments from Debtor equal to the decline in value of the Property.

### D. Reservation of Right to Amend and Supplement

Alliance has scheduled 2004 examinations of the Debtor and a Debtor-affiliated tenant (which is also a Chapter 11 debtor) in this matter and will be receiving documents related to those examinations. Alliance reserves the right to supplement this Motion with any additional information learned at the 2004 examinations or otherwise.

## III. CONCLUSION

Based on all of the foregoing, Alliance is entitled to relief from the automatic stay to exercise its rights and remedies in and to the Property. Alternatively, Debtor must provide Alliance with adequate protection payments.

RESPECTFULLY SUBMITTED this 24th day of February, 2014.

                              SNELL & WILMER L.L.P.

                              By: */s/ Jill H. Perrella*
                                  Jonathan M. Saffer
                                  Jill H. Perrella
                                  One South Church Ave, Suite 1500
                                  Tucson, Arizona  85701-1630
                                  *Attorneys for Alliance Bank of Arizona*

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

**COPY** of the foregoing served by U.S. Mail or electronic notification on this 24th day of February, 2014, to:

Scott D. Gibson
LAW OFFICE OF SCOTT D. GIBSON, P.L.L.C.
6303 E. Tanque Verde Rd., Ste. 210
Tucson, AZ 85715
ecf@sdglaw.net
*Attorney for Debtor*

Renee Sandler Shamblin
OFFICE OF THE U.S. TRUSTEE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706
renee.s.shamblin@usdoj.gov

William Scott Jenkins, Jr.
Alissa A. Brice
RYLEY CARLOCK & APPLEWHITE
One N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4417
sjenkins@rcalaw.com
abrice@rcalaw.com
*Attorneys for Resolute Commercial Services*

Matthew H. Sloan
JENNINGS, HAUG & CUNNINGHAM, L.L.P.
2800 N. Central Ave., Ste. 1800
Phoenix, AZ 85004-1049
mhs@jhc-law.com
*Attorneys for National Bank of Arizona*

**List of Creditors Holding 20 Largest Unsecured Claims**

Pima County Treasurer
P.O. Box 29011
Phoenix, AZ 85038-9011

CB Richard Ellis, Inc.
File 056411 Location 2158
Los Angeles, CA 90074

The Sage Tax Group, Inc.
5995 E. Grant Rd., Ste. 100
Tucson, AZ 85712-2354

Watson Refrigeration
4717 S. Irving Ave.
Tucson, AZ 85714-2113

Beach Fleischman PC
P.O. Box 64130
Tucson, AZ 85728-4130

- 11 -

Case 4:14-bk-00092-BMW   Doc 56   Filed 02/24/14   Entered 02/24/14 10:14:14   Desc
Main Document   Page 11 of 12

18763749

| | |
|---|---|
| 1 | City of Tucson Water<br>P.O. Box 28804 |
| 2 | Tucson, AZ 85726-8804 |
| 3 | Tucson Electric Power<br>P.O. Box 80077 |
| 4 | Prescott, AZ 86304-8077 |
| 5 | All American Pest Control<br>P.O. Box 31988 |
| 6 | Tucson, AZ 85751-1988 |
| 7 | A.I.S., Inc.<br>4300 S. Station Master Dr. |
| 8 | Tucson, AZ 85714-3293 |
| 9 | Swisher<br>P.O. Box 473526 |
| 10 | Charlotte, NC 28247-3526 |
| 11 | City of Tucson License Section<br>255 W. Alameda St. |
| 12 | Tucson, AZ 85701-1303 |
| 13 | Tucson Backflow<br>P.O. Box 57341 |
| 14 | Tucson, AZ 85732-7341 |
| 15 | Phillips Plumbing<br>P.O. Box 32523 |
| 16 | Tucson, AZ 85751-2523 |
| 17 | Roadrunner Lock & Safe<br>4444 E. Grant Rd. Ste. 112 |
| 18 | Tucson, AZ 85712-2647 |
| 19 | Truly Nolen Exterminating<br>3620 E. Speedway Blvd. #110 |
| 20 | Tucson, AZ 85716-4018 |
| 21 | United Fire Equipment Co.<br>335 N. 4th Ave. |
| 22 | Tucson, AZ 85705-8442 |
| 23 | */s/ Clarrissa Palma* |

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200