Matthew H. Sloan (No. 018632)
E-mail: mhs@jhc-law.com
**JENNINGS, HAUG & CUNNINGHAM, L.L.P.**
2800 N. Central Avenue, Suite 1800
Phoenix, AZ 85004-1049
Telephone: 602-234-7800
Facsimile: 602-277-5595

Attorneys for National Bank of Arizona

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| MCMAHON PROPERTIES, LLC, | Case No.: 4:14-bk-00092-BMW |
| Debtor. | **RESPONSE AND OBJECTION TO MOTION TO APPROVE OPTION CONTRACT FOR POSSIBLE PURCHASE OF REAL PROPERTY FREE AND CLEAR OF LIENS** |

National Bank of Arizona ("NB|AZ") herewith files its Response and Objection to McMahon Properties, LLC's Motion to Approve Option Contract for Possible Purchase of Real Property Free and Clear of Liens ("Motion") (Dkt. 77). This Response and Objection is supported by the attached and herein incorporated Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I. RELEVANT FACTUAL BACKGROUND**

1. NB|AZ has made a loan (**"Loan"**) to Debtor McMahon Properties, L.L.C., an Arizona limited liability company (**"Debtor"**), as co-borrower with Debtor's affiliates, Metro Restaurants, Inc., an Arizona corporation and Keaton's & Company, Inc., an Arizona corporation (collectively with Debtor the **"Borrowers"**).[1] The Loan was in the original principal amount of $1,600,000.00.

---

[1] Several of the Debtor's related/affiliated entities, including Metro Restaurants, Inc., which all appear to be operated by the same principal, also filed for Chapter 11 bankruptcy protection: *see In re*

2. The Loan is currently governed by the Business Loan Agreement dated November 29, 2007 executed by Borrowers in favor of NB|AZ, as modified by that certain Loan Modification Agreement (**"Modification Agreement"**) dated as of December 4, 2013 to be effective as of April, 2012 (collectively **"Loan Agreement"**).

3. The Loan is currently evidenced by the Promissory Note dated November 29, 2007 executed by Borrowers in favor of NB|AZ in the original principal amount of $1,594,846.33 (**"Note"**).

4. Payment and performance of the Loan and the Note is secured by, among other things, the Deed of Trust and Fixture Filing dated September 6, 2007 and recorded on September 10, 2007 at Docket 13136, Page 1591, Sequence No. 20071750462, Official Records of the Pima County Recorder, Arizona as modified by the Modification of Deed of Trust dated November 29, 2007 and recorded on December 19, 2007 at Docket 13205, Page 2009, Sequence No. 20072440456, Official Records of the Pima County Recorder (**"Deed of Trust"**). A true and correct copy of the Deed of Trust is attached to NB|AZ's Notice of Non-Consent to Use of Cash Collateral (Dkt. 47) as Exhibit "A."

5. The Deed of Trust grants a security interest to NB|AZ in, among other things, certain real property and fixtures thereto commonly known as 6464 East Tanque Verde Road, Tucson, Arizona 85715 (**"Real Property"**) and legally described in the Deed of Trust. The Deed of Trust encumbers the Real Property as a first position lien.

---

*Metro Restaurants, Inc.* (Case No. 4:14-bk-01278-BMW); *In re McMahon's Steakhouse, LLC* (Case No. 4:14-bk-01281-BMW); *In re Old Pueblo Grill, LLC* (Case No. 4:14-bk-01283-BMW); *In re Metropolitan Grill, LLC* (Case No. 4:14-bk-01284-BMW). According to the Arizona Corporation Commission, Keaton's & Company, Inc. was administratively dissolved on June 13, 2011.

6. The Deed of Trust also expressly and presently assigns to NB|AZ and grants to NB|AZ a collateral security interest in all right, title and interest in and to all present and future leases of the Real Property and all Rents from the Real Property. Rents is defined in the Deed of Trust as, "all present and future rents, revenues, income, issues, royalties, profits and other benefits derived from the Real Property."

7. Debtor acquired fee simple title to the Real Property by Special Warranty Deed recorded on March 26, 2008 at Docket 13256, Page 1928, Sequence No. 20080440436, Official Records of the Pima County Recorder.

8. Payment and performance of the Loan and Note is further secured by the Assignment of Rents recorded on September 10, 2007 at Docket 13136, Page 1609, Sequence No. 20071750463, Official Records of the Pima County Recorder and the Assignment of Rents recorded on December 19, 2007 at Docket 13205, Page 2015, Sequence No. 20072440457, Official Records of the Pima County Recorder (collectively the **"Assignments of Rents"**). True and correct copies of the Assignments of Rents are attached to NB|AZ's Notice of Non-Consent to Use of Cash Collateral (Dkt. 47) as Exhibits "B" and "C." The Assignments of Rents encumber the Real Property. By their terms, the Assignments of Rents are binding upon and enforceable against Debtor as one of the Borrowers and as the owner of the Real Property.

9. As confirmed and ratified by the Modification Agreement, NB|AZ exercised its rights to collect all rents in April, 2012.

10. Payment and performance of the Loan and the Note is further secured by the Commercial Security Agreement dated November 29, 2007 executed by Borrowers granting to NB|AZ a collateral security interest in certain collateral including, without limitation, "All Equipment located at 6464

1 | East Tanque Verde Road, Tucson, AZ 85715" (**"Commercial Security**
2 | **Agreement"**).
3 | 11. The collateral security interests granted by the Commercial Security
4 | Agreement were perfected by the UCC-1 Financing Statement filed with the
5 | Arizona Secretary of State on December 18, 2007 at File No. 200715184268, as
6 | amended by the UCC-3 Financing Statement Addendum filed on April 9, 2009
7 | and as continued by UCC-3 Continuation Statement filed on August 1, 2012.
8 | True and correct copies of these UCC Financing Statements are attached to
9 | NB|AZ's Notice of Non-Consent to Use of Cash Collateral (Dkt. 47) as Exhibit
10 | "D."
11 | 12. The principal balance due and owing under the Note as of
12 | January 3, 2014, was approximately $1,364,680.30. Additionally, there is
13 | accrued and accruing interest, late charges, and attorneys' fees and costs
14 | pursuant to the terms of the Note.
15 | 13. On or about January 3, 2014, Debtor filed a petition for bankruptcy
16 | relief under the provisions of Chapter 11 of the United States Bankruptcy Code
17 | (the "Code").
18 | 14. On February 18, 2014, NB|AZ filed a Notice of Non-Consent to Use
19 | of Cash Collateral (Dkt. 47).
20 | 15. On March 5, 2014, Debtor filed a Response to Notice of
21 | Non-Consent to Use of Cash Collateral, agreeing not to use "any cash collateral
22 | from the real property and/or rents of the collateral held by National Bank of
23 | Arizona pending further order of this Court" (Dkt. 61).
24 | 16. On March 20, 2014, Debtor filed its Motion to Approve Option
25 | Contract for Possible Sale of Real Property Free and Clear of Liens (Dkt. 77).
26 | ///

## II. INTRODUCTION

Through its Motion, the Debtor is seeking the Court's approval of a "possible" sale that may or may not occur at some point in the future. Normally, NB|AZ would be in favor of a prompt sale of its collateral that would result in payment in full of the outstanding amounts due and owing under the Note. However, the manner in which the Debtor purportedly seeks to accomplish that goal in this case is problematic and uncertain.

The Debtor does not attempt to accomplish the possible sale by submitting a purchase contract, but rather by providing a proposed twelve year lease with a purchase option ("Lease"). Because there is no guarantee that the purchase option will be exercised, it is premature to consider approving a "possible" sale that may not occur within the three year option term. Instead, NB|AZ believes that the Court should only consider approval of the Lease at this time, with any purchase option being subject to court approval at a future date when and if the option is exercised.

Had the Debtor approached NB|AZ with the potential Lease and purchase option prior to filing its Motion, many of the concerns of NB|AZ may have been resolved. For reasons unclear to NB|AZ, the Debtor chose to simply file the present Motion. As a result, this Objection outlines NB|AZ's legal objections to the "possible" sale as well as its initial concerns regarding the substance of the proposed transaction, and the form of the Lease itself. For the reasons set forth herein, NB|AZ respectfully requests that the Debtor's Motion be denied at this time.

///

///

///

## III. ARGUMENT

### A. The Debtor Has Not Met Its Burden Under Section 363(f)

Section 363(f) of the Code authorizes a trustee or debtor in possession to sell property of the estate free and clear of any interest in such property of an entity other than the estate only if –

 (1) Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

 (2) the entity with the interest in the collateral consents to the sale;

 (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

 (4) the interest is in a bona fide dispute; or

 (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

NB|AZ believes that a motion to sell the Real Property under Section 363(f) is premature. Assuming that the issues raised below can be resolved to its satisfaction, NB|AZ may not be opposed to the Debtor leasing the Real Property and granting a purchase option. However, any determination to actually sell the Real Property free and clear of liens should be addressed with the filing of a separate sale motion if and when the purchase option is exercised.

#### 1. NB|AZ Does Not Consent To The Sale

One of the requirements of Section 363(f) is that the proposed sale must be consented to by those entities with an interest in the Real Property. NB|AZ has multiple issues with the proposed "possible" sale described in the Lease that prevent NB|AZ from granting its consent at this time. Without the consent of NB|AZ, the proposed sale cannot proceed.

NB|AZ's primary objection relates to the disposition of the non-refundable earnest money deposit to be paid under Section 21 of the Lease. Based upon the Deed of Trust and the Assignments of Rents, any proceeds, rents, revenues or profits from a possible sale of the Real Property or from the Lease belong to NB|AZ. Prior to the filing of this case, in April, 2012, NB|AZ exercised its rights to receive the rents from the Real Property and the prior tenant had been paying those rents directly to NB|AZ with the Debtor's consent, all as confirmed and ratified in the Modification Agreement. Once this case was filed, NB|AZ asserted its rights to any rents, revenues and other proceeds by filing a Notice of Non-Consent to Use of Cash Collateral on February 18, 2014 and the Debtor filed its Response on March 5, 2014 acknowledging that it would not attempt to use NB|AZ's cash collateral without a court order.

However, according to Section 21(b) of the Lease, the Tenant is to pay the Debtor a $450,000.00 non-refundable earnest money deposit once the Tenant takes possession of the Real Property and all closing documents are executed. Neither the Debtor's Motion, nor the Lease provide for the disposition of the earnest money or the Debtor's intent with regard to them. The proceeds, rents revenues or profits of the Real Property under the Deed of Trust and Assignments of Rents are the property of NB|AZ and must be released to NB|AZ.

In *Old Stone Bank v. Tycon I Building Limited Partnership*, 946 F.2d 271 (4th Cir. 1991), the Fourth Circuit addressed the precise issue of whether or not earnest money relating to the potential sale of a debtor's property belonged to a creditor who had a security interest in that property by virtue of a deed of trust. *Id.* In concluding that the earnest money did belong to the secured creditor, the

Fourth Circuit first looked at whether or not a deed of trust against real property attaches to the proceeds derived from any disposition of the real property. *Id.* Second, the Fourth Circuit looked at whether an earnest money deposit was derived from a disposition of collateral. *Id.*

Considering precedent from multiple jurisdictions, the Fourth Circuit concluded that when a would-be purchaser places an earnest money deposit against real property that they intend to purchase, they are, in essence, obtaining a right to purchase the land. *Id.* The existence of the deposit prevents the seller from selling the property to anyone else. *Id.* A valuable right to the property was conveyed [at that time]. *Id.* Selling that right to purchase the property at a given price was a disposition of the collateral, and any earnest money therefore constitutes proceeds from such disposition.

Here, the Deed of Trust conveyed to NB|AZ all of the Debtor's right, title, and interest in and to the Real Property, including, among other things, all profits relating to the Real Property. In the event of a default under the Deed of Trust, NB|AZ is entitled to, among other things, collect any Rents from the Real Property. Rents is defined in the Deed of Trust as, "all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property."

In addition, the Assignments of Rents conveyed to NB|AZ a continuing security interest in and all of the Debtor's right, title, and interest in and to the Rents. Rents is defined in the Assignments of Rents to mean:

> 'all of Grantor's present and future rights, title and interest in, to and under any present and future leases, including without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property . . . .'

See Assignments of Rents at p. 9 and p. 10.

Under the circumstances, there can be no doubt that the proposed $450,000.00 earnest money to be paid under the Lease belongs to NB|AZ and that it should be turned over to NB|AZ to be applied to the amounts due and owing under the Note.

## 2. The Motion Does Not Satisfy 363(f)(3)

In order to comply with Section 363(f)(3) and obtain approval of a sale free and clear of liens, the Debtor would need to establish that the sale price is greater than the aggregate value of all liens on the Real Property. 11 U.S.C.A. § 363(f)(3). *In re PW, LLC*, 391 B.R. 25, 50 Bankr. Ct. Dec. (CRR) 70 (B.A.P. 9th Cir. 2008). In other words, in order for the Debtor to sell the Real Property free and clear of liens and encumbrances, the sale price must be greater than the total value of liens on the Real Property. *In re Cramer*, 295 B.R. 397 (Bankr. S.D. Fla. 2003). Absent doing so, a sale of the Real Property free and clear of liens would result in unfair discrimination against NB|AZ.

NB|AZ has a first position lien on the Real Property securing repayment of the Note which had an original principal balance of $1,594,846.33. The Debtor claims in its Motion that it believes that the potential sale of the Real Property will be sufficient to pay all liens in full. However, such "belief" is insufficient to meet the Debtor's burden under Section 363(f)(3). The Motion clearly suggests that there are other liens on the Real Property, but fails to identify them or indicate if those additional liens will be paid in full and whether or not there will be any proceeds left for the Debtor's estate. If there will not be any proceeds above and beyond the payment of the liens, then the estate will receive no benefit from the sale unless the Debtor can demonstrate some other basis for such a sale under Section 363(f). *In re Riverside Inv. Partnership*, 674 F.2d 634, 640 (7th Cir. 1982).

### 3. The Motion Does Not Satisfy 363(f)(4)

Under Section 363(f)(4), a sale may proceed free and clear of liens or interests if the liens are in bona fide dispute. The Debtor has the burden of demonstrating that a bona fide, genuine dispute regarding the lien or interest exists. *Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)* 159 B.R. 821 (N.D. Ill. 1993). In order to meet this burden, a debtor must establish that there is an objective basis for either a factual or a legal dispute as to the validity of the debt. *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991).

Here, the Debtor does not specifically allege in the Motion that NB|AZ's lien on the Real Property is subject to a bona fide dispute. Consequently, the Debtor has provided no basis on which to allege that a genuine dispute exists as to the validly or extent of NB|AZ's lien in the amount of $1,600,000.00 on the Real Property. As a result, there is no basis to approve a sale of the Real Property under 11 U.S.C.A. § 363(f)(4) as being subject to a bona fide dispute.

### B. There Are Many Issues With The Proposed Lease

Even if the Debtor is able to obtain approval of a possible sale at this time, there are several problems and issues with the terms and conditions of the proposed Lease. In the event the Tenant chooses not to exercise its purchase option, then the Debtor will be bound by the Lease, which will have a direct impact on NB|AZ and its rights in its collateral. For these reasons, NB|AZ objects to any approval of the Lease at this time. Without limitation, NB|AZ has the following initial substantive concerns about the Lease:

1. <u>Who is the Tenant?</u> The proposed Tenant, 6464 Tucson, LLC, was newly formed as an Arizona limited liability company on March 14, 2014. The Motion provides no information concerning this new entity, and its financial

wherewithal to perform pursuant to the terms of the Lease, much less exercise the granted option rights. It is unclear from the Motion why this entity needs to be the Tenant and then in turn sublease to LJBCAZ I, LLC d/b/a La Jolla Brewing Company. NB|AZ has been unable to identify the existence or domicile of this entity.

NB|AZ objects to anyone other than the operating company being the Tenant under the Lease, particularly without any information being provided about such entity and its financial wherewithal. Assuming the other issues relating to the Lease can be resolved, there is no reason that the Lease could not allow for the Tenant or a nominee to exercise the purchase option if that is the underlying concern. In any event, financial statements and other information are hereby requested by NB|AZ for all entities and individuals involved and financially interested in the Lease and the purchase option granted thereunder.

This information must include, without limitation: i) verification of funds sufficient to pay the non-refundable earnest money deposit; ii) CPA prepared financial statements, including a balance sheet and income statement for the past three fiscal years; iii) an internally prepared financial statement current as of the end of the most recent calendar quarter, including a balance sheet and income statement; and iv) income tax returns for the prior three fiscal years. The Lease should be guaranteed by the individuals or other parties interested in the lease transaction with demonstrated appropriate financial ability to perform.

2. <u>Section 2 – Lease Term</u>. The 12 year Term with a right to extend for an additional 5 years is excessive under the circumstances. The Note currently has a maturity of September 6, 2017. If the purchase option is not exercised within the first three years of the Lease, then the term is too long for NB|AZ. This is particularly true without a plan on file.

1        3.     <u>Section 3 – Rent.</u>  The proposed rent is not commercially reasonable.  The proposed rent is much less than the rent that was paid previously by a former tenant which was sufficient to pay NB|AZ's then monthly payment of $10,616.73 with additional funds remaining.  Debtor should have to make some showing that the proposed rent is commercially reasonable.  Free rent for the first two months is objectionable absent some consideration from the Tenant that benefits NB|AZ.  Section 3(a)(ii).  It is not clear whether the 2% per year rent escalation continues during the 5 year extension term.  Section 3(b).  Consistent with the current practice and loan documents, amounts paid as additional rent for real estate taxes and insurance premiums must be impounded both before and after plan confirmation.  NB|AZ is willing to facilitate the impound account arrangement.

        4.     <u>Section 4 – Security Deposit</u>.  A security deposit of only one month's rent is not sufficient.  At least two month's rent should be required.  Additionally, any security deposit must be held in escrow or impounded, both before and after plan confirmation.  More specificity in the last sentence concerning the last month's payment to the holder of the first deed of trust before Closing would be desirable.

        5.     <u>Section 6 – Use and Occupancy</u>.  Again, the Tenant should be the operating company, not a newly formed LLC.  This section also refers to the transfer of any liquor license, permit or certificate.  To the extent such liquor license or permit is owned by Debtor, it is arguably NB|AZ's collateral and any consideration for these should flow through to NB|AZ.

        6.     <u>Section 7 – Assignment and Subletting</u>.  The Tenant should be the operating company, LJBCAZ I, LLC d/b/a La Jolla Brewing Company.

///

Additionally, any further assignment or sublease arrangement must be approved by NB|AZ.

7. <u>Section 8 – Repair and Damage</u>. Section 8(a) is unclear. Tenant's obligation to make any desired repairs or improvements should be confirmed. All construction repairs and improvements must be performed by a properly licensed contractor. To the extent any capital improvements are contemplated as part of the Tenant's original build out, NB|AZ is entitled to understand the nature and extent of such improvements to evaluate their impact on the value of its real and personal property collateral.

Under Section 8(d)(i)(1), no abatement of rent should be permitted unless Landlord maintains business interruption insurance sufficient to cover the rent payments. Under Section 8(d)(ii), if Tenant terminates the Lease under this provision, the purchase option should terminate as well.

8. <u>Section 9 – Insurance and Liability</u>. Section 9 should include a Tenant indemnity provision in favor of the Landlord.

Under Section 9(a), the term "Comparable Buildings" is not defined. This section should also clearly require Landlord to maintain policies of insurance covering lost or damaged property in the full amount of its replacement value. All insurance required by the Lease (whether by Landlord or Tenant) should comply with the insurance requirements of the NB|AZ loan documents. Landlord must secure business interruption insurance. NB|AZ should be named as the additional insured under such policies.

Under Section 9(b), deductible limitations of $5,000 should be included along with a covenant that any deductible amount due under any policy of insurance, whether maintained by Landlord or Tenant, should be paid by Tenant. This section contains no provision concerning the payment of

premium, proof of insurance requirements, or notice to NB|AZ prior to expiration or cancellation of any such policies.

9. <u>Section 21 – Option to Purchase</u>. Under Section 21(a), the Tenant is required to make a non-refundable earnest money deposit in the amount of $450,000.00 to the Debtor upon the providing of possession of the Real Property to the Tenant. Neither Section 21(a), nor any other part of the Lease identifies what will happen to the earnest money. As noted in more detail above in Section III(A)(1) of this Response and Objection, any such earnest money provided is the property of NB|AZ and should be paid directly to it in partial satisfaction of the Note.

Assuming the above listed substantive objections of NB|AZ can be satisfactorily resolved, the proposed Lease has the following additional issues that should be addressed:

- The Debtor and proposed Landlord is incorrectly identified as McMahon Properties, Inc. The proper designation is McMahon Properties, LLC, an Arizona limited liability company.
- The Lease purports to grant the Tenant rights in certain personal property and trade fixtures currently located within the leased premises, defined in the lease as the "Existing Personal Property" listed on Exhibit B. There is no property listed on Exhibit B. NB|AZ generally objects to the granting of any rights to use or purchase any Existing Personal Property that is NB|AZ's collateral. NB|AZ also objects to the grant of any lien against or security interest in the Existing Personal Property subordinate to NB|AZ. Before NB|AZ can fully consider this grant, a copy of "Exhibit B" must be provided.
- The term "Building" does not appear to be defined in the Lease.

1  - The Commencement Date and/or commencement of the Term should include discussion of this bankruptcy case and the requirement of final Bankruptcy Court approval.
- The Lease should expressly acknowledge the Tenant's subordination to NB|AZ's deed of trust.
- The right of first refusal should require Bankruptcy Court approval. The intent to do so is suggested in Section 22 of the Lease, but not made clear.
- Copies of all the due diligence materials to be made available to Tenant under Paragraph 21(b) should also be made available to NB|AZ.
- The existing First Deed of Trust should be more precisely defined, and all amounts due under the Loan and Note secured by the existing First Deed of Trust naming NB|AZ as beneficiary, recorded on September 10, 2007, Docket 13136, Page, 1591, Sequence No. 20071750462, Official Records of the Pima County Recorder, Arizona.
- All required notices under Paragraph 16 should be copied to NB|AZ.

## IV. CONCLUSION

For the reasons set forth herein, NB|AZ objects to the proposed Lease and "possible" sale proposed by the Debtor. Neither the Lease nor the proposed sale should be approved by the Court absent an order directing that all proceeds of the Lease, including the earnest money and any money generated by the sale of any other collateral of NB|AZ be paid directly to NB|AZ.

In addition, all of the other issues under the Lease and the proposed purchase as outlined above by NB|AZ need to be addressed and resolved to

///

Case 4:14-bk-00092-BMW    Doc 106    Filed 04/14/14    Entered 04/14/14 19:22:07    Desc
Main Document    Page 15 of 19

1 | NB|AZ's satisfaction. In the absence of satisfactory resolution of these issues,
2 | the Debtor's Motion should be denied.
3 |     DATED this 14th day of April, 2014.
4 |                             JENNINGS, HAUG & CUNNINGHAM, L.L.P.

/s/ Matthew H. Sloan (#018632)
Matthew H. Sloan
Attorneys for National Bank of Arizona

Filed electronically and copies
mailed this 14th day of April,
2014, to:

Scott D. Gibson
Law Office of Scott D. Gibson, PLLC
6303 E. Tanque Verde Road, Suite 210
Tucson, AZ 85715
Attorneys for Debtor

Renee Sandler Shamblin
Office of the United States Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

William Scott Jenkins, Jr.
Alissa A. Brice
Ryley Carlock & Applewhite
One N. Central Avenue, Suite 1200
Phoenix, AZ 85004-4417
Attorneys for Resolute Commercial Services

Jonathan M. Saffer
Nathan G. Kanute
Snell & Wilmer, LLP
One S. Church Avenue, Suite 1500
Tucson, AZ 85701-1630
Attorneys for Alliance Bank of Arizona

Grant Winston
David W. Krula
Pima County Attorney's Office
32 N. Stone Avenue, Suite 2100
Tucson, AZ 85701
Attorneys for Pima County

| | |
|---|---|
| 1 | Pat P. Lopez, III |
| | Rebecca K. O'Brien |
| 2 | Rusing Lopez & Lizardi, PLLC |
| | 6363 N. Swan Road, Suite 151 |
| 3 | Tucson, AZ  85718 |
| | Attorneys for LALI Investments, LLC |
| 4 | |
| | List of Creditors Holding 20 |
| 5 | Largest Unsecured Claims |
| | (see attached) |
| 6 | |
| 7 | /s/ T. Kido |
| | 968-244 tk |
| 8 | |

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0970-4<br>Case 4:14-bk-00092-BMW<br>District of Arizona<br>Tucson<br>Mon Apr 14 16:00:12 MST 2014 | LALI Investments, LLC<br>c/o Rusing Lopez & Lizardi, PLLC<br>6363 N. Swan Road<br>Suite 151<br>Tucson, AZ 85718-3637 | MCMAHON PROPERTIES, LLC<br>4644 E. FORT LOWELL RD.<br>TUCSON, AZ 85712-1111 |
| PIMA COUNTY<br>C/O PIMA COUNTY ATTORNEY'S OFFICE<br>32 N. STONE AVE., STE. 2100<br>TUCSON, AZ 85701-1458 | U.S. Bankruptcy Court, Arizona<br>38 S. Scott Avenue<br>Tucson, AZ 85701-1704 | A.I.S., Inc.<br>4300 S Station Master Dr<br>Tucson, AZ 85714-3293 |
| ARIZONA DEPARTMENT OF REVENUE<br>ATTENTION BK PAYMENT UNIT<br>C/O 1275 W WASHINGTON AVE<br>PHOENIX AZ 85007-2926 | All American Pest Control<br>PO Box 31988<br>Tucson, AZ 85751-1988 | Alliance Bank Of Arizona<br>2701 E Camelback Rd Ste 110<br>Phoenix, AZ 85016-4310 |
| Beach Fleischman PC<br>PO Box 64130<br>Tucson, AZ 85728-4130 | CB Richard Ellis, Inc.<br>File 056411 Location 2158<br>Los Angeles, CA 90074-0001 | City Of Tucson LIcense Section<br>255 W Alameda St<br>Tucson, AZ 85701-1303 |
| City Of Tucson Water<br>PO Box 28804<br>Tucson, AZ 85726-8804 | Danita A. McMahon<br>7460 N. Catalina Ridge Drive<br>Tucson, AZ 85718-1386 | Keaton's & Company, Inc.<br>4644 E Fort Lowell Rd<br>Tucson, AZ 85712-1111 |
| MATTHEW H. SLOAN<br>JENNINGS, HAUG & CUNNINGHAM, LLP<br>2800 N. CENTRAL AVENUE, SUITE 1800<br>PHOENIX, AZ 85004-1049 | Metro Restaurants, Inc.<br>4644 E Fort Lowell Rd<br>Tucson, AZ 85712-1111 | National Bank Of Arizona<br>335 N Wilmot Rd 6th Fl<br>Tucson, AZ 85711-2658 |
| Paradigm Tax Group<br>Paradigm Tax Group<br>3030 N Central Ave Ste 1001<br>Phoenix AZ 85012-2716<br>jschultz@paradigmtax.com | Phillips Plumbing<br>PO Box 32523<br>Tucson, AZ 85751-2523 | (p)PIMA COUNTY ARIZONA<br>C O PIMA COUNTY ATTORNEY - CIVIL DIVISION<br>32 N STONE AVE SUITE 2100<br>TUCSON AZ 85701-1458 |
| Pima County, Arizona<br>c/o Pima County Attorney - CIVIL<br>32 N. Stone Avenue, Suite 2100<br>Tucson, AZ 85701-1458 | Resolute Commercial Services<br>c/o W. Scott Jenkins Jr. & Alissa Brice<br>Ryley Carlock & Applewhite<br>1 N. Central Ave., #1200<br>Phoenix, AZ 85004-0989 | Roadrunner Lock & Safe<br>4444 E Grant Rd Ste 112<br>Tucson, AZ 85712-2647 |
| Robert B. McMahon<br>7460 N. Catalina Ridge Drive<br>Tucson, AZ 85718-1386 | SOUTHWEST GAS CORPORATION<br>PO BOX 1498<br>VICTORVILLE, CA 92393-1498<br>BANKRUPTCY DESK | Snell & Wilmer<br>1 S Church Ave Ste 1500<br>Tucson, AZ 85701-1633 |
| Swisher<br>PO Box 473526<br>Charlotte, NC 28247-3526 | The Sage Tax Group II, LLC<br>1773 E. Prince Road Tucson, AZ 85719-192<br>jschultz@paradigmtax.com | The Sage Tax Group, Inc.<br>1773 E. Prince Road<br>Tucson, AZ 85719-1926 |

| | | |
|---|---|---|
| Truly Nolen Exterminating<br>3620 E Speedway Blvd # 110<br>Tucson, AZ 85716-4095 | Tucson Backflow<br>PO Box 57341<br>Tucson, AZ 85732-7341 | Tucson Electric Power<br>PO Box 80077<br>Prescott, AZ 86304-8077 |
| U.S. TRUSTEE<br>OFFICE OF THE U.S. TRUSTEE<br>230 NORTH FIRST AVENUE<br>SUITE 204<br>PHOENIX, AZ 85003-1725 | United Fire Equipment Co.<br>335 N 4th Ave<br>Tucson, AZ 85705-8497 | Watson Refrigeration<br>4717 S Irving Ave<br>Tucson, AZ 85714-2113 |
| SCOTT D. GIBSON<br>LAW OFFICE OF SCOTT D. GIBSON, PLLC<br>6303 E TANQUE VERDE ROAD, SUITE 210<br>TUCSON, AZ 85715-3859 | c/o W. Scott Jenkins and Alissa Brice Resolu<br>Ryley Carlock & Applewhite<br>1 N. Central Ave., #1200<br>Phoenix, AZ 85004-0989 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Pima County Treasurer
PO Box 29011
Phoenix, AZ 85038-9011


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Alliance Bank of Arizona | (u)NATIONAL BANK OF ARIZONA | (d)LALI Investments, LLC<br>c/o Rusing Lopez & Lizardi, PLLC<br>6363 N. Swan Road, Suite 151<br>Tucson, AZ 85718-3637 |

End of Label Matrix
Mailable recipients    37
Bypassed recipients     3
Total                  40