**McEVOY, DANIELS & DARCY, P.C.**
Camp Lowell Corporate Center
4560 East Camp Lowell Drive
Tucson, Arizona 85712
Telephone: (520) 326-0133
Fax: (520) 326-5938

Sally M. Darcy
darcysm@aol.com
Attorney for Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ) | Chapter 11 Proceedings |
| ) | |
| MCMAHON PROPERTIES, LLC, ) | Case No. 4:14-bk-00092-BMW |
| ) | |
| ) | **TRUSTEE'S AMENDED PLAN OF REORGANIZATION DATED OCTOBER 27, 2014** |
| Debtor. ) | |
| ) | |

## Article I

### Introduction

Christopher Linscott, the duly appointed Chapter 11 Trustee ("Trustee) submits his Amended Plan of Reorganization dated October 27, 2014 ("Amended Plan") in accordance with 11 U.S.C. §1121(a). The Trustee contends that the Amended Plan contains non-adverse modifications to the plan dated July 29, 2014. In the event the Court determines there are impaired classes, and votes are insufficient for confirmation pursuant to 11 U.S.C. §1129(a), the Trustee requests the Bankruptcy Court for the District of Arizona (the "Court") to confirm the Amended Plan pursuant to 11 U.S.C. §1129(b).

## Article II

### Definitions

As used in the Amended Plan, the following terms shall have the respective meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of

the terms defined, unless the context requires otherwise. Terms that are defined by the Bankruptcy Code shall have the meaning defined by the Bankruptcy Code unless specifically modified herein. All terms not specifically defined by this Amended Plan shall have the meaning designated in the Bankruptcy Code, or, if not defined therein, their ordinary meaning. These definitions are a substantial and operative part of the Amended Plan.

a. **"Administrative Claims"** shall mean any Allowed Claim that is defined in §503(b) of the Code as being an "administrative expense" within the meaning of such section.

b. **"Administrative Expense"** means any claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with Code §503(b), including without limitation:

i. the actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor (other than such claims or portions thereof which, by their express terms, are not due or payable by the Effective Date);

ii. the full amount of all claims for allowance of compensation for legal or other professional services or reimbursement of costs and expenses under Code §§330 or 503(b) or otherwise allowed by the Court;

iii. all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

c. **"Allowed Claim"** shall mean (a) a Claim allowed by a final order; (b) a Claim as to which a timely and proper proof of claim or application for payment has been filed and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections; or (c) a Claim allowed under the Amended Plan, notwithstanding any objection filed thereto by any Person.

d. "**Avoidance Actions**" mean any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under section 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which may be released or dismissed as part of and pursuant to the Amended Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

e.  **Bankruptcy Rules** shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Court and local rules applicable to cases pending in the Court, as the same may from time to time be in effect and applicable to proceedings under the Amended Plan.

f  **Case** shall mean the Chapter 11 case commenced by the filing with the Court on January 3, 2014, of a voluntary petition for relief under Chapter 11 of the Code by Debtor, which petition is assigned Case No 14-00092-BMW.

g.  "**Causes of Action**" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, cross claims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Trustee, including, but not limited to, the Avoidance Actions.

h.  **Chapter 11** shall mean Chapter 11 of the Code, 11 U.S.C. §1101 et. seq.

I.  "**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

j  **Code** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §101, et seq.

k.  **Confirmation Date** shall mean the date on which the Court enters the confirmation order.

l.  **Court** shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

m.  **Effective Date of the Amended Plan** shall mean the later of (I) the first business day following the thirtieth day after entry by the Court of an Order confirming this Amended Plan, or (ii) the first business day after such Order has become final and unappealable; provided, no appeal of said Order is pending.

n. "**Excess Net Cash Flow**" shall mean any Net Cash Flow of the Debtor during any period, less amounts payable to the holders of the Class 4 and 5 Claims under the terms of the Amended Plan.

o. "**Exculpated Persons**" means the Trustee, and his employees, agents, partners, attorneys, advisors and professionals.

p. "**Insider**" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

q. "**Interests**" means any and all equity interests, ownership interests or share in the Debtor issued prior to the Petition Date, whether or not certificated, transferable, voting or denominated stock or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

r. "**Net Cash Flow**" shall mean, for any period, an amount equal to the gross receipts of the Debtor during such period with respect to the business, computed on the cash basis, reduced by all expenditures of the Debtor during such period with respect to the business which expenditures shall include, without limitation, (a) payment of all operating expenses of the debtor, and (b) capital expenditures, if any, by the Debtor with respect to the business to the extent not paid out of the proceeds of capital receipts, or out of the proceeds of contributions to the capital of the Debtor or loans by the Debtor's members or third-party to the Debtor; provided, however, that the aggregate of any such capital expenditures paid out of gross receipts shall be reasonable and appropriate for operation of the Business.

s. "**Outstanding Principal**" shall mean an amount equal to the sum of (1) the fair market value of the real assets of the Debtor as of the Effective Date; less (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to the Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claim between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the effective Date which may be claimed or provided for under the Note. The Outstanding Principal shall also not include any attorneys' fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective Date, except to the extent permitted under Bankruptcy Code Section 506.

t. "**Personal Property**" means the personal property owned by the Debtor on the Petition Date and as identified on the Debtor's Schedule B and identified in the Disclosure Statement..

u. **"Petition Date"** shall mean, January 3, 2014, the date Debtor filed its voluntary petition under Chapter 11 of the Code with this Court.

v. **"Amended Plan"** shall mean the Trustee's Amended Plan of Reorganization proposed by the Trustee and dated October 27, 2014, and as may be further amended, modified or supplemented from time to time.

w. "**Plan Fund**" shall mean a fund of money to be deposited into an interest bearing deposit account for the exclusive use by the Trustee or Property Manager to pay Claims. The Plan Fund shall be initially funded from all cash on hand as of the Effective Date, less funds required to pay claims payable as of the Effective Date in accordance with the Amended Plan. On or before the 20th day of each month, the Trustee or Property Manager shall deposit all Excess Net Cash Flow less payments to the Class 4 and 5 claimants into the Plan Fund. In addition, all Net Cash Sale Proceeds from the sale of assets other than in the ordinary course of business shall be deposited into the Plan Fund.

x. "**Property**" means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in Section 541 of the Bankruptcy Code.

## Article III

## Summary of the Amended Plan

The Bankruptcy was filed on January 3, 2014. The Amended Plan provides for modification of the terms of the Debtor's obligations to its creditors, but provides for full payment of all allowed claims within six years of the Effective Date.

## Article IV

### A. Classification And Treatment Of Claims And Interests

All Allowed Claims and Allowed Interests are placed in the classes described below. The Amended Plan divides all claims into 7 separate classes All impaired classes of claims and interests

shall receive the distributions set forth in this section on account of and in complete satisfaction of all such Allowed Claims (and any interest). Without limiting the foregoing and upon the Effective Date, each creditor and each equity security holder (or its successor) shall be deemed to have waived, relinquished and released any and all of its rights and claims against the Debtor (other than as provided for in the Amended Plan or the Court's Order confirming the Amended Plan), and all defaults to the creditors shall be deemed cured. In accordance with 11 U.S.C. § 1122, all claims against the Debtor and/or estate of the Debtor are classified as follows:

**Class 1** – Administrative Claims. Administrative expenses are those that have been incurred since the initiation of this bankruptcy. The Bankruptcy Code at § 507(a)(1) provides that administrative expenses are entitled to a first priority in payment. Administrative expenses are those set forth in § 503 of the Bankruptcy Code and are estimated to include the following:

a. U.S. Trustee Fees (unknown, believed to be zero). Any amounts owing will be paid on the Effective Date, before payments to unsecured creditors. Post-confirmation reports will be filed and post-confirmation fees will be paid until the case is closed.

b. McEvoy, Daniels & Darcy, PC. Unpaid attorneys fees and costs for Trustee's attorneys will be paid on the Effective Date or as agreed upon by the parties. The fees and costs incurred to date are approximately $30,000.00. It is anticipated that on the Effective Date the fees and costs will be approximately $45,000.00.

c. Post-petition expenses incurred by the Debtor and Trustee have been paid as they have been incurred in the ordinary course of business. To the extent they have not been paid or provided for, they will be paid on the Effective Date or as agreed upon by the parties.

d. Chapter 11 Trustee's Fees. and costs as provided for by the Bankruptcy Code.

The Trustee estimates the administrative claims will be $75,000-100,000.

This class does not vote.

**Class 2** consists of all Claims that are entitled to priority under Bankruptcy code § 507(A)(3) through (10), other than real property tax claims to whatever extent (if any) that such claims exist. Every class 2 Claim, other than real property taxes, shall be paid in full, and in cash, upon the Effective Date.

Class 2 claims are not impaired under the Amended Plan.

**Class 3** consists of the real property tax claims under § 507(a)(8) which shall be paid, with interest at the statutory rate, in semi-annual installments, or sooner, from the Plan Fund, as such funds are available, but no later than a date that is five years from the date of the Order for relief commencing this case. The Trustee anticipates paying these claim on the Effective Date. Payment, in full, on the Effective Date is dependent on the closing of the Tanque Verde Property prior to the Effective Date. In the event the Tanque Verde Property does not close prior to the Effective Date, the real property taxes will be paid in full, not later than five years from the Petition Date.

Class 3 claims are impaired under the Amended Plan.

**Class 4** consists of the secured claim of, Alliance Bank, and assuming it does not make the 1111(b) election, its Allowed Claim will be set at $5,600,000.00. Commencing on the first day of the first calendar month following the Effective Date, the Outstanding Principal (as defined in the Amended Plan) of the Class 4 Claim, shall accrue simple interest at the rate of 5.25% per annum or such amount as may be set by the Court. The Allowed Claim shall be paid: (I) first, in monthly installments of interest-only for a period of one (1) year, and then (ii) in equal monthly installments amortized over a period of 25 years with the entire amount of the Outstanding Principal of the Class 4 Claim, together with any accrued and unpaid interest thereon due and payable upon the 6th anniversary of the Effective Date. The amortization schedule for the Class 4 Claim is attached hereto as Exhibit "7." On the 6th anniversary of the Effective Date, the Allowed Claim will be paid upon a sale of the Swan Property or a refinance of the Swan Property.

In addition to the above, the Debtor shall reserve for real property taxes by making monthly payments to Alliance Bank in the amount necessary to pay the real property taxes when due, which amount shall be held in reserve by Alliance Bank and Alliance Bank shall pay the real property taxes from said account when due.

Alliance Bank will receive interest payments totaling $294,000 the first year.

In the event Alliance Bank makes the 1111(b) Election its claim will be satisfied in 10 years as follows:

Its Allowed Claim shall be reduced by the cash collateral payments paid from the Petition

Date through the Effective Date, which will be not less than $171,264.18. The balance of its Allowed Claim shall be paid in the same manner as if it had not made the 1111(b) election.

The Class 4 Claim is impaired under the Amended Plan.

**Class 5** consists of the secured claim of National Bank. The Class 4 Claim shall be paid in accordance with the Stipulation Between The Trustee and National Bank of Arizona Re Use of Cash Collateral which was filed with the Court and is attached hereto as Exhibit "3." The Class 5 Claim shall be paid according to the loan documents at the non-default contract rate of interest. The Class 5 claim shall be paid in full on the due date, September 6, 2017, unless the option has not been exercised. In that event, the Class 5 claim shall be paid in full on August 31, 2018 with interest accruing after September 6, 2017 at the greater of the non-default contract interest rate or 5%. The Class 5 Claim is impaired under the Amended Plan.

**Class 6** consists of the general unsecured Claims. The Class 6 claims shall be paid in full, in cash, in semi-annual installments, without interest, in a pro rata amount from the Plan Fund. Class 6 Claims shall not include any interest charges, fees, or other costs incurred or assessed after the Petition Date through and including the Effective Date. The Trustee projects that the Class 6 Claims will be paid in full within seven (7) years of the Effective Date.

The Class 6 Claims are impaired.

**Class 7** Claims consist of the equity ownership interest of the members of the Debtor. The membership interest of the existing members of the Debtor shall not receive anything on account of their interests unless or until the Class 6 claims are paid in full.

The Class 7 Claims are impaired under the Amended Plan.

**B. Provisions For Execution Of The Amended Plan**

The Amended Plan proposes that, upon confirmation, ownership of the assets of the Chapter 11 estate be vested in the Debtor, and the Debtor shall operate and manage the business. The Amended Plan authorizes the Debtor to pay ordinary and necessary operating expenses in order to maintain a viable operation, including a reasonable salary to the employees of the Reorganized Debtor. No members, officers or directors of the Debtor are to receive any compensation for services rendered to the Debtor in connection with this reorganization case.

The Trustee has prepared an estimate of his source of post-confirmation income and expenses. The Trustee estimates annual net income available for funding the Amended Plan, after payments of taxes and secured debt of approximately $4,000.00 per month. A copy of the Trustee's projections is attached to the Disclosure Statement. Based upon these projections, the Trustee believes that the Class 6 creditors will be paid in a period of not more than five years.

On the Effective Date, the Trustee shall establish a Plan Fund consisting of a separate segregated interest-bearing deposit account into which the Trustee shall deposit funds for distribution to Class 3 and 6 claimants as required by the Amended Plan. The Plan Fund shall be funded initially from cash funds in the Trustee's possession on the Effective Date (including certain proceeds from the funding of the Option Agreement for the Tanque Verde Property), less funds required to be paid under the Amended Plan on the Effective Date and an Operating Reserve of $50,000.00. On or before the last Business Day of each calendar year following the Effective Date, the Debtor shall deposit into the Plan Fund the Excess Net Cash Flow received during the prior calendar year. All funds in the Plan Fund will be disbursed semi-annually, first to the holders of Class 3 Claims, and then to the holders of the Class 6 Claims, as provided in the Amended Plan. The Trustee will remain in control of the Plan Fund until the $445,000.00 paid under the Option Agreement is disbursed pursuant to the terms of the Amended Plan.

## Article V

## General Provisions

### A. Confirmation Without Acceptance By All Impaired Classes

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired classes of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

If a class of impaired claim(s) rejects the Amended Plan, the Trustee reserves the right to seek confirmation of this Amended Plan by a "cram-down" of such non-accepting class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Court declines to impose a cram-down on a non-accepting class unless certain modifications are made to the terms and conditions of such

class's treatment under this Amended Plan, the Trustee reserves the right, without re-solicitation to the extent permitted by the Code, to propose such modifications and to confirm this Amended Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

**B. Provisions for the Assumption or Rejection of Executory Contracts and Unexpired Leases**

Unless rejected prior to the Effective Date or under the Amended Plan, the Trustee hereby expressly assumes all executory contracts to which the Debtor is a party, including, without limitation, any unexpired leases. The Trustee expressly rejects the following executory contracts: None.

**C. Trustee's Causes of Action**

The Trustee shall retain all of Debtor's Causes of Action, including any potential Avoidance Causes of Action. The Trustee does not believe there are any Avoidance Actions, including, but not limited to preferential transfers under Section 547 of the Bankruptcy Code or fraudulent transfers under Section 548 of the Bankruptcy Code

**D.     Vesting of Property**

On the Effective Date of the Amended Plan, except as otherwise provided herein, or in the Confirmation Order, the Debtor shall be vested with its real and personal property or assets from its estate, free and clear of all liens, charges, and other interests of creditors arising prior to the Petition Date, except as provided by the Amended Plan of Reorganization.

**E.     Retention of Jurisdiction**

The Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or objections thereto and for any other purpose which is contemplated in the Amended Plan or which will otherwise assist in the consummation of the Amended Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any claims or administrative expenses. The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Amended Plan. In addition, the Court shall retain jurisdiction for the following purposes:

(1) The classification of any claim or interest, the determination of such objections as may be filed to claims, or interests, and the re-examination of the allowance of any claim or interest.

(2) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Amended Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Amended Plan.

(3) To enforce and interpret the terms and conditions of this Amended Plan.

(4) Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Trustee and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

(5) Determination of any claims asserted by the Trustee against any other person or entity, including but not limited to such rights the Trustee may have had to recover assets pursuant to the provisions of Title 11, if such claim is pursued in the Court prior to the closing of the case.

(6) Determination of all questions and disputes concerning the sale, lease, or other transfer of property of the Debtor.

(7) Entry of a Final Decree closing this case.

Notwithstanding anything to the contrary contained herein, the Trustee shall not be bound by estoppel, the principal of res judicata or collateral estoppel with respect to any term of provision contained herein in the event the Amended Plan is not confirmed as set forth herein.

**Article VI**

**Effect of Confirmation**

Confirmation of this Amended Plan shall constitute a discharge of Claims against the Debtor. Under the terms of the Trustee's Amended Plan, no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtor's respective successors or their respective property, except as expressly provided herein. Except as otherwise

provided herein, the Confirmation Order shall provide, among other things, that no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from or, seek recourse against, the Debtor, or its respective successors or their respective property, except as expressly set forth herein.

## Article VII

## Exculpation and Limitation of Liability

The Trustee, his managers, employees, agents, partners, attorneys, advisors and professionals (collectively, the "Exculpated Parties") shall not have or incur any liability to any Person for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the formulation, negotiation, implementation, confirmation or consummation of this Amended Plan, the Amended Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during th Chapter 11 Case or otherwise created in connection with this Amended Plan, provided, however, that nothing in this section shall be construed to release or exculpate any Exculpated Party from willful misconduct or gross negligence as determined by a Final Order, or from compliance with Amended Plan provisions.

Upon entry of the Confirmation Order, all holders of Claims and Interest and other parties in interest, along with their respective present or former employees, members, agents, officers, directors, or principals, shall be enjoined from taking any action to interfere with the implementation or Consummation of the Trustee's Amended Plan.

## Article VIII

## Acceptance of the Trustee's Amended Plan

**A. Voting**

As a condition to confirmation, the Bankruptcy Code requires that each Class of impaired Claims and interests vote to accept the Trustee's Amended Plan, except under certain circumstances. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired Claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of Claims in that Class, but for that purpose counts only those who actually vote to accept or to reject the Trustee's Amended Plan. Thus, a Class of Claims will have voted to accept the Trustee's

- 12 -
Case 4:14-bk-00092-BMW    Doc 187    Filed 11/19/14    Entered 11/19/14 15:44:48    Desc
Main Document    Page 12 of 15

Amended Plan only if two-thirds in amount and a majority in number actually vote and cast their Ballots in favor of acceptance. Under Section 1126(d) of the Bankruptcy Code, a Class of Interest has accepted the Trustee's Amended Plan if holders of such Interest holding at least two-thirds in amount actually voting have voted to accept the Trustee's Plan. Holders of Claims or interests who fail to vote are not counted as either accepting or rejecting the Trustee's Amended Plan.

**B. Best Interests Test**

Even if a is accepted by each class of holders of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that the Amended Plan is in the "best interest" of all holders of claims and interests that are impaired by the Amended Plan and that have not accepted the Amended Plan. The "best interest" test, as set forth in Section 1129(a)(7) requires a bankruptcy court to find either that (I) all members of an impaired class of claims or interest have accepted the Amended Plan or (ii) the Amended Plan will provide a member who has not voted to accept the Amended Plan with a recovery of property of a value, as of the effective date of the Amended Plan that is not less than the amount that such holder would recover if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Trustee believes this provision has been met.

**Article IX**

**Tax Consequences**

Implementation of the Amended Plan may have significant tax consequences to the creditors. SAID PERSONS AND ENTITIES SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF IMPLEMENTATION OF THE AMENDED PLAN.

**Article X**

**Avoidance of Judgment Liens**

In the event any creditor has recorded a judgment lien encumbering the Debtor's Property, the lien shall be null and void.

## Article XI

## Management

The Trustee has determined that a property manager is not necessary and would only add another layer of expense. The Reorganized Debtor will manage the estate. The tenant of the Tanque Verde Property will be responsible for the utilities and the real property taxes, and will pay National Bank of Arizona directly. Payment to Alliance Bank include the monthly loan payment, and a reserve for real property taxes. If the Debtor fails to pay Alliance Bank, Alliance Bank can exercise its remedies under its loan documents.

## Article XII

## Permanent Injunction

The Confirmation Order shall forever enjoin the commencement or continuation of any action, or the employment of process, against the Debtor or its Property, with respect to any debt or claim discharged under the Amended Plan. The Confirmation Order shall further enjoin any of the creditors from taking any action to prevent the Trustee or the Debtor from effectuating the provisions of the Amended Plan.

## Article XIII

## Allowance of Claims

Notwithstanding any other provision of the Amended Plan, each claim shall be paid only after it has been allowed in accordance with the Code.

## Article XIV

## Withdrawal of Amended Plan

At the option of the Trustee, the Amended Plan may be withdrawn at any time prior to the Effective Date of the Amended Plan. Such option shall be exercised by the filing in the case of a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case. If such option is timely and properly exercised, the case shall continue and be administered as if the Amended Plan had been withdrawn prior to the confirmation.

## Article XV

## Recommendation of the Trustee

The Trustee recommends the Amended Plan be approved. The Trustee is of the opinion that the Amended Plan's approval is in the best interest of all creditors.

RESPECTFULLY SUBMITTED this 19th day of November, 2014.

McEVOY, DANIELS & DARCY, P.C.

By: /s/ Sally M. Darcy
    Sally M. Darcy
    Attorney for the Trustee