McEvoy Daniels & Darcy,
4560 East Camp Lowell Drive
Tucson, Arizona 85712
Telephone: (520) 326-0133
Fax: (520) 326-5938

Sally M. Darcy
darcysm@aol.com
Attorney for Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Proceeding |
| | ) | |
| MCMAHON PROPERTIES, LLC, | ) | Case No. 4-14-bk-00092-BMW |
| | ) | |
| | ) | **TRUSTEE'S AMENDED DISCLOSURE** |
| | ) | **STATEMENT FOR ITS AMENDED** |
| | ) | **PLAN OF REORGANIZATION** |
| | ) | **DATED OCTOBER 27, 2014**[1] |
| Debtor. | ) | |
| | ) | |
| | ) | |

Christopher Linscott, duly appointed Chapter 11 Trustee ("Trustee") in the above captioned case, by and through undersigned counsel, submits his Amended Disclosure Statement for his Amended Plan of Reorganization Dated October 27, 2014. The Trustee is providing this Amended Disclosure Statement ("Disclosure Statement") to McMahon Properties, LLC (the "Debtor"), all of the Debtor's known creditors and to its equity security holder pursuant to 11 U.S.C.§ 1125 in order for them to make an informed judgment in exercising the right to vote on the Trustee's Amended Plan of Reorganization dated October 27, 2014 (the "Amended Plan"). A copy of the Amended Plan is attached hereto as Exhibit "1."

## I.   PURPOSE OF AMENDED DISCLOSURE STATEMENT

### A. Introduction

The Debtor is an Arizona limited liability company. A copy of the record filed with the

---

[1]The Trustee contends that the Amended Plan contains only non-adverse modification to the Plan dated July 29, 2014.

1 │ Arizona Corporation Commission is attached hereto as Exhibit "2."

2 │   The Debtor filed for relief under Chapter 11 on January 3, 2014 in the District of Arizona,

3 │ Tucson Division. The Trustee has filed with the Bankruptcy Court for the District of Arizona (the

4 │ "Court") this Amended Disclosure Statement and Amended Plan of Reorganization.

5 │   The objective of a Chapter 11 case is the confirmation of a plan of reorganization or

6 │ liquidation. A Chapter 11 plan describes in detail the means for satisfying the claims and interests

7 │ against a debtor. After a plan has been filed, the holders of claims and interests are permitted to vote

8 │ to accept or reject the plan. Before acceptances can be solicited for a plan, Section 1125 of the

9 │ Bankruptcy Code requires the plan proponent to prepare a disclosure statement containing adequate

10 │ information of a kind, and in sufficient detail to enable those parties entitled to vote on the plan to

11 │ make an informed judgment about the plan and about whether they should accept or reject the plan.

12 │   After notice and hearing, the Court will determine whether the Amended Disclosure

13 │ Statement contains information adequate and in sufficient detail to enable the holders of claims

14 │ against the Debtor to make an informed judgment about the merits of approving or rejecting the

15 │ Amended Plan.

16 │   The Amended Disclosure Statement will be used to solicit acceptances of the Amended Plan

17 │ only after the Bankruptcy Court has entered an order approving this Amended Disclosure Statement.

18 │ Approval of this Amended Disclosure Statement means only that the Bankruptcy Court has found

19 │ that this Amended Disclosure Statement contains sufficient information for the Trustee to transmit

20 │ the Amended Plan and Amended Disclosure Statement to creditors and to solicit votes to accept or

21 │ reject the Amended Plan.

22 │   NO REPRESENTATIONS CONCERNING THE DEBTOR'S FINANCIAL CONDITION,

23 │ THE AMENDED PLAN OR THE POSSIBLE SUCCESS OF THE AMENDED PLAN ARE

24 │ AUTHORIZED BY THE TRUSTEE OTHER THAN AS SET FORTH IN THIS AMENDED

25 │ DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO

26 │ SECURE ACCEPTANCE OF THE AMENDED PLAN THAT ARE OTHER THAN THOSE

27 │ CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT SHOULD NOT BE RELIED

28 │ ON BY ANY CLAIMANT IN REACHING A DECISION. THE INFORMATION CONTAINED

- 2 -

IN THIS AMENDED DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.

THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS AMENDED DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE AMENDED PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS TO MAKE AN INFORMED DECISION WHETHER TO ACCEPT OR REJECT THE AMENDED PLAN.

THIS IS A SOLICITATION BY THE TRUSTEE ONLY AND IS NOT A SOLICITATION BY HIS ATTORNEYS, AGENTS, FINANCIAL ADVISORS, OR ACCOUNTANTS

**B. Defined Terms:** Most words or phrases in this Amended Disclosure Statement have their usual and customary meanings. Certain capitalized terms have the same meaning as defined in the Amended Plan, or as defined in this Amended Disclosure Statement. If not otherwise defined, certain terms in this Amended Disclosure Statement have the meaning provided in the Bankruptcy Code or Bankruptcy Rules.

**II.**      **SOURCE OF INFORMATION FOR THE AMENDED DISCLOSURE STATEMENT**

The Amended Disclosure Statement was prepared from information provided by public records, the Debtors' schedules, claims, pleadings, and Mr. McMahon, the principal of the Debtor, and the Debtor's employees and agents. The Trustee also obtained information from persons managing entities that are related to the Debtor.

**III.**      **HISTORY OF THE DEBTOR AND SUMMARY OF EVENTS LEADING TO THE CHAPTER 11 FILING**

**A. The Debtor and its Principals**

The Debtor is an Arizona limited liability company. Its members are identified on the attached Exhibit "2." Mr. Robert McMahon ("McMahon") was the spokesperson for the Debtor.

According to McMahon, the Debtor was formed as a limited liability company in 1997 for the purpose of acquiring a parcel of property located at the Southwest Corner of Swan Road and Ft. Lowell Road in Tucson, Arizona, and specifically the location of the former Palamino Plaza

- 3 -

Restaurant, which closed. McMahon desired to open a "five star" steakhouse at the former location of the Palomino and to acquire the land adjacent to the restaurant to create a "Plaza" of office, retail, and restaurant operations on the same property. McMahon acquired two small office complexes located adjacent to the old Palomino Restaurant and vacant land to the South for a total of five commercial acres (the "Swan Property"). Commercial, retail and office structures were constructed on the vacant land, and the restaurant was expanded and remodeled to be the new "McMahon's Steakhouse," (the "Restaurant"). The Restaurant is the largest single tenant at the Swan Property. The recession of 2007-2012 resulted in a reduction of sales at the Restaurant and a loss of tenants at the Swan Property. As a result, the Debtor fell behind in its payments to its secured lender, Alliance Bank (the "Bank") and in the payment of the real property taxes related to the Swan Property. To avoid a foreclosure of the Swan Property commenced by the Bank, the Debtor filed this Chapter 11 reorganization.

In addition to the Swan Property, the Debtor acquired and owns a vacant building at 6464 East Tanque Verde Road in Tucson ("Tanque Verde Property"). The Tanque Verde Property was occupied by a single tenant operating a restaurant known as the "Nimbus Brewery." Shortly after the bankruptcy filing, the tenant vacated the premises, leaving the Debtor without a revenue stream for this property. The Tanque Verde Property is subject to a lien in favor of National Bank of Arizona ("National Bank").

**B. Summary of Current Operations**

Prior to the filing of the Debtor's Chapter 11, the Bank sought and obtained the appointment of a receiver to take possession of the Swan Property. At the request of the Bank, the Maricopa County Superior Court appointed a Phoenix real estate firm, Resolute Commercial Services, to be the receiver (the "Receiver"). Twelve days after the filing of the Chapter 11 petition, and after the Debtor had made demand upon the Receiver to turn over possession of the assets of the Debtor, the Bank filed a Motion to excuse turnover of the property of the estate to the Debtor. A Stipulation was entered into with the Bank to allow the Receiver to remain in possession for a short period of time, and thereafter, on February 23, 2014, over the objection of the Bank, the Court ordered the Receiver to turn over possession of the estate assets to the Debtor. However, the Bank continued its efforts

- 4 -

to relieve the Debtor of control of the Swan Property and filed (I) a notice of non-consent to use of cash collateral; (ii) an Emergency Motion to appoint a Chapter 11 Trustee or to Convert the Case to a case under Chapter 7; and (iii) a Motion for Relief from all stays and injunctions to allow it to foreclose upon the Swan Property.

On April 29, 2014, the Court entered its Order appointing Christopher Linscott as Trustee. The Trustee and the Bank had an oral agreement regarding use of cash collateral. Recently, the Bank withdrew its permission to allow the Trustee to use the Cash Collateral. The Trustee has been making monthly adequate protection payments to the Bank in the approximate sum of $28,000.00. As of September 29, 2014, the Trustee had paid the Bank $176,264.18 for cash collateral. A final hearing on the Bank's Motion for Relief from Stay is riding the calendar with the hearing on the confirmation of the Trustee's Amended Plan.

After the bankruptcy filing, the Debtor entered ito a Lease and Purchase Option with an entity known as 6464 Tucson, LLC (the "Buyer") pursuant to which the Tanque Verde Property would be leased to the Buyer for a twelve year term, at a rental rate that provides sufficient funds to pay all the expenses of the Tanque Verde Property, including the payment to National Bank. In addition, the agreement contained an Option Agreement allowing the Buyer to purchase the Tanque Verde Property for a sum equal to the unpaid balance of the National Bank loan at the time of the exercise of the option, plus, a non-refundable option fee payment upon delivery of possession, in the sum of $445,000.00. This agreement was approved by the Court at a hearing held on May 22, 2014, and the Order approving the Option Agreement was entered on June 23, 2014. The Stipulation regarding the cash collateral agreement between National Bank and the Trustee is attached hereto as Exhibit "3."

IV.    **STATEMENT OF ASSETS AND LIABILITIES**

As indicated above, the Debtor owns two parcels of real estate, the Swan Property and the Tanque Verde Property. In addition, the Debtor owns fractional interests in three other assets. A summary of the assets follows:

**Swan Property**

Description: Multi-use commercial property of 46,933 square feet

- 5 -

Occupancy: 96%

Estimated Value: $5,840,000.00 [Based on the Bank's appraisal]

Alliance Claim: $5,616,907.38 [Based on proof of claim]

Delinquent Taxes: $260,000.00

Equity: $0[2]

**Tanque Verde Property**

Description: Turn Key Restaurant

Occupancy: 0% (The Trustee anticipates that the occupancy will soon be 100% when the Buyer takes possession.)

Estimated Value: $1,900,000.00

National Bank Secured Debt: $1,400,000.00

Delinquent Taxes: $14,000.00

Equity: $486,000.00

**60 N. Alvernon LLC (75% Member Interest)**

Description: Real property at 60 N. Alvernon, Tucson with tenant, Old Pueblo Grill Restaurant

Occupancy: 100%

Estimated Value:$800,000.00

**Wilmot & Kolb, LLC (33% Member Interest)**

Description: 189 acres of unimproved land

Estimated Value: $200,000.00 [based on the Trustee's communications with the company's manager, Duff Hearon]

**FM Golf Holdings, LLC (18% Member Interest)**

Description: Member Interest in Canoa Ranch Golf Course and Torres Blancas Golf Course, Green Valley, Arizona

---

[2]Assuming the tenants pay the rent, the Trustee believes the Swan Property cash flows to pay the Bank and the unsecured creditors.

- 6 -

1    Estimated Value: 0 The Debtor has not made its capital calls.

2          In addition to the real estate and fractional interests, the Debtor's remaining assets

3    consist of cash of approximately $59,000.00, accounts receivable of approximately $550,000.00 of

4    which the Debtor estimates that most are uncollectible. Most of the receivables are due from entities

5    related to the Debtor.  An analysis of the accounts receivable is attached hereto as Exhibit "4."

6          Other than the secured debts described above and the real estate taxes owing on the Swan and

7    Tanque Verde Properties, the Debtor owes approximately $135,000.00 in unsecured debt.  The list

8    of unsecured creditors is attached hereto as Exhibit "5."

9          The Trustee is not aware of pre-petition avoidance actions, and does not anticipate pursuing

10   such actions, if they exist.  The Trustee is not aware of any non-bankruptcy litigation that he would

11   pursue.

12   **V.     THE DEBTOR'S AFFILIATES AND RELATED ENTITIES**

13         McMahon Properties, LLC is a limited liability company and Robert and Danita McMahon

14   are the sole members.  Several entities who have common members or are related to the Debtor are

15   described below.

16         A.  Metro Restaurants, Inc: This entity previously served as the management company for

17   the various McMahon related holdings, including the Debtor.  This entity was also a tenant at the

18   Swan Property.  Robert McMahon was the President/CEO and he and Dan Multhrup each owned

19   50% of Metro Restaurants.  Metro Restaurants filed a Chapter 11 in Tucson on January 31, 2014,

20   Case No. 14-01278.  The case was converted to a Chapter 7 on October 17, 2014.

21         B.  McMahon's Steakhouse, LLC: This entity is a tenant in the Swan Property and has not

22   paid rent for several months.  This tenant is the largest single tenant in the Swan Property, occupying

23   approximately 13,000 square feet or 30% of the leaseable square feet of the complex.  This entity

24   filed a Chapter 11 in Tucson on January 31, 2014, Case No. 14-01281-BMW.  Metro Restaurants

25   is the sole member of this entity.  McMahon's Steakhouse paid its October and November 2014 rent.

26         C.  Old Pueblo Grill, LLC: This entity is a restaurant and Metro Restaurants owned 100%

27   of the membership.  It is the sole tenant of 60 N. Alvernon, LLC, of which 75% is owned by the

28   Debtor. Old Pueblo Grill filed its Chapter 11 in Tucson on January 31, 2014, Case No. 14-01283-

- 7 -

BMW.

D. 60 N. Alvernon, LLC: This entity is not in bankruptcy and the Debtor owns 75% of this entity. It owns the real property where the Old Pueblo Grill is located.

E. Metropolitan Grill, LLC: This entity filed a Chapter 11 in Tucson on January 31, 2014, Case No. 14-01284-BMW, and converted to a Chapter 7 on July 29, 2014. The sole member of this entity was Metro Restaurants.

G. FM Holdings, LLC: The Debtor owns an 18% interest in this entity which owns two golf courses in Green Valley, Arizona – Canoa Ranch and Torres Blancas.

H. Wilmot Kolb, LLC: This entity owns 189 acres of undeveloped land in Tucson. The Debtor owns a 33% interest in this entity.

## VI. THE PRESENT CONDITION OF DEBTOR AND ANTICIPATED FUTURE OF DEBTOR.

With the lease of the Tanque Verde Property and the payment of the option fee, the Trustee believes the Debtor will have the ability to reorganize. As noted above, the Trustee is currently making monthly adequate protection payments to the Bank, and National Bank's claim will be paid by funds from the new tenant occupying the Tanque Verde Property, and thereafter, by the monthly rent payments, to be paid directly by the tenant to National Bank.

## VII. LIQUIDATION ANALYSIS

Under the amended Plan, all allowed claims are to be paid in full. Were the Debtor to cease operations, the Debtor's secured lenders, which hold liens on the Swan and Tanque Verde Properties would in all likelihood foreclose on their collateral. The value of the remaining collateral, fractional interests in limited liability companies, would be difficult to sell. The Trustee believes the uncertainty of the value and ability to liquidate the interests is speculative and that payment from the operation of the business is the most prudent way to pay the unsecured creditors  A liquidation analysis is attached hereto as Exhibit "6."

## VIII DESCRIPTION OF THE AMENDED PLAN

The following is a brief summary of the more significant provisions of the Amended Plan filed contemporaneously with this Amended Disclosure Statement. In the event of any discrepancy with

- 8 -

this Amended Disclosure Statement, the terms of the Amended Plan shall control. This summary is qualified in its entirety by the full text of the Amended Plan, which all creditors are urged to read carefully. The Amended Plan, if confirmed, will be binding upon the Debtor, and its creditors. The capitalized terms used, but not defined in this Amended Disclosure Statement, have the meaning ascribed to them by the Amended Plan.

### A. Classification And Treatment Of Claims And Interests

All Allowed Claims and Allowed Interests are placed in the classes described below. The Amended Plan divides all claims into 7 separate classes All impaired classes of claims and interests shall receive the distributions set forth in this section on account of and in complete satisfaction of all such Allowed Claims (and any interest). Without limiting the foregoing and upon the Effective Date, each creditor and each equity security holder (or its successor) shall be deemed to have waived, relinquished and released any and all of its rights and claims against the Debtor (other than as provided for in the Amended Plan or the Court's Order confirming the Amended Plan), and all defaults to the creditors shall be deemed cured. In accordance with 11 U.S.C. § 1122, all claims against the Debtor and/or estate of the Debtor are classified as follows:

Class 1 – Administrative Claims. Administrative expenses are those that have been incurred since the initiation of this bankruptcy. The Bankruptcy Code at § 507(a)(1) provides that administrative expenses are entitled to a first priority in payment. Administrative expenses are those set forth in § 503 of the Bankruptcy Code and are estimated to include the following:

a. U.S. Trustee Fees (unknown, believed to be zero). Any amounts owing will be paid on the Effective Date, before payments to unsecured creditors. Post-confirmation reports will be filed and post-confirmation fees will be paid until the case is closed.

b. McEvoy, Daniels & Darcy, PC. Unpaid attorneys fees and costs for Trustee's attorneys will be paid on the Effective Date or as agreed upon by the parties. The fees and costs incurred to date are approximately $30,000.00. It is anticipated that on the Effective Date the fees and costs will be approximately $45,000.00.

c. Post-petition expenses incurred by the Debtor and Trustee have been paid as they have been incurred in the ordinary course of business. To the extent they have not been paid or

- 9 -

1 provided for, they will be paid on the Effective Date or as agreed upon by the parties.

2           d. Chapter 11 Trustee's Fees. and costs as provided for by the Bankruptcy Code.

3 The Trustee estimates the administrative claims will be $75,000-100,000.

4           This class does not vote.

5      **Class 2** consists of all Claims that are entitled to priority under Bankruptcy code § 507(A)(3)

6 through (10), other than real property tax claims to whatever extent (if any) that such claims exist.

7 Every class 2 Claim, other than real property taxes, shall be paid in full, and in cash, upon the Effective

8 Date.         Class 2 claims are not impaired under the Amended Plan.

9      **Class 3** consists of the real property tax claims under § 507(a)(8) which shall be paid, with

10 interest at the statutory rate, in semi-annual installments, or sooner, from the Plan Fund, as such funds

11 are available, but no later than a date that is five years from the date of the Order for relief

12 commencing this case. The Trustee anticipates paying these claim on the Effective Date. Payment,

13 in full, on the Effective Date is dependent on the closing of the Tanque Verde Property prior to the

14 Effective Date. In the event the Tanque Verde Property does not close prior to the Effective Date, the

15 real property taxes will be paid in full, not later than five years from the Petition Date.

16         Class 3 claims are impaired under the Amended Plan.

17      **Class 4** consists of the secured claim of, Alliance Bank, and assuming it does not make the

18 1111(b) election, its Allowed Claim will be set at $5,600,000.00. Commencing on the first day of the

19 first calendar month following the Effective Date, the Outstanding Principal (as defined in the

20 Amended Plan) of the Class 4 Claim, shall accrue simple interest at the rate of 5.25% per annum or

21 such amount as may be set by the Court. The Allowed Claim shall be paid: (I) first, in monthly

22 installments of interest-only for a period of one (1) year, and then (ii) in equal monthly installments

23 amortized over a period of 25 years with the entire amount of the Outstanding Principal of the Class

24 4 Claim, together with any accrued and unpaid interest thereon due and payable upon the 6th

25 anniversary of the Effective Date. The amortization schedule for the Class 4 Claim is attached hereto

26 as Exhibit "7." On the 6th anniversary of the Effective Date, the Allowed Claim will be paid upon a

27 sale of the Swan Property or a refinance of the Swan Property.

28      In addition to the above, the Debtor shall reserve for real property taxes by making monthly

- 10 -

payments to Alliance Bank in the amount necessary to pay the real property taxes when due, which amount shall be held in reserve by Alliance Bank and Alliance Bank shall pay the real property taxes from said account when due.

Alliance Bank will receive interest payments totaling $294,000 the first year.

In the event Alliance Bank makes the 1111(b) Election its claim will be satisfied in 10 years as follows:

Its Allowed Claim shall be reduced by the cash collateral payments paid from the Petition Date through the Effective Date, which will be not less than $171,264.18. The balance of its Allowed Claim shall be paid in the same manner as if it had not made the 1111(b) election.

The Class 4 Claim is impaired under the Amended Plan.

**Class 5** consists of the secured claim of National Bank. The Class 4 Claim shall be paid in accordance with the Stipulation Between The Trustee and National Bank of Arizona Re Use of Cash Collateral which was filed with the Court and is attached hereto as Exhibit "3." The Class 5 Claim shall be paid according to the loan documents at the non-default contract rate of interest. The Class 5 claim shall be paid in full on the due date, September 6, 2017, unless the option has not been exercised. In that event, the Class 5 claim shall be paid in full on August 31, 2018 with interest accruing after September 6, 2017 at the greater of the non-default contract interest rate or 5%.

The Class 5 Claim is impaired under the Amended Plan.

**Class 6** consists of the general unsecured Claims. The Class 6 claims shall be paid in full, in cash, in semi-annual installments, without interest, in a pro rata amount from the Plan Fund. Class 6 Claims shall not include any interest charges, fees, or other costs incurred or assessed after the Petition Date through and including the Effective Date. The Trustee projects that the Class 6 Claims will be paid in full within seven (7) years of the Effective Date.

The Class 6 Claims are impaired.

**Class 7** Claims consist of the equity ownership interest of the members of the Debtor. The membership interest of the existing members of the Debtor shall not receive anything on account of their interests unless or until the Class 6 claims are paid in full.

The Class 7 Claims are impaired under the Amended Plan.

- 11 -

## B. <u>Provisions For Execution Of The Amended Plan and Future Management</u>

The Amended Plan proposes that, upon confirmation, ownership of the assets of the Chapter 11 estate be vested in the Debtor, and the Debtor shall operate its business as it has in the past. The Amended Plan authorizes the Debtor to pay ordinary and necessary operating expenses in order to maintain a viable operation, including a reasonable salary to the employees of the Reorganized Debtor. No members, officers or directors of the Debtor are to receive any compensation for services rendered to the Debtor in connection with this reorganization case.

The Debtor, in conjunction with the Trustee has prepared an estimate of its source of post-confirmation income and expenses. The Debtor estimates annual net income available for funding the Amended Plan, after payments of taxes and secured debt of approximately $4,000.00 per month. A copy of the Trustee's projections is attached hereto as Exhibit "3." Based upon these projections, the Trustee believes that the Debtor will be able to fund the Amended Plan and pay the Class 6 creditors in a period of not more than five years.

On the Effective Date, the Trustee shall establish a Plan Fund consisting of a separate segregated interest-bearing deposit account into which the Trustee shall deposit funds for distribution to Class 3 and 6 claimants as required by the Amended Plan. The Plan Fund shall be funded initially from cash funds in the Trustee's possession on the Effective Date (including certain proceeds from the funding of the Option Agreement for the Tanque Verde Property), less funds required to be paid under the Amended Plan on the Effective Date and an Operating Reserve of $50,000.00. On or before the last Business Day of each calendar year following the Effective Date, the Debtor shall deposit into the Plan Fund the Excess Net Cash Flow received during the prior calendar year. All funds in the Plan Fund will be disbursed semi-annually, first to the holders of Class 3 Claims, and then to the holders of the Class 6 Claims, as provided in the Amended Plan. The Trustee will remain in control of the Plan Fund until the $445,000.00 paid under the Option Agreement is disbursed pursuant to the terms of the Amended Plan.

The Trustee has determined that a property manager is not necessary and would only add another layer of expense. The Reorganized Debtor will manage the estate. The tenant of the Tanque Verde Property will be responsible for the utilities and the real property taxes, and will pay National

- 12 -

Bank of Arizona directly, Payments to Alliance Bank include the monthly loan payment, and a reserve for real property taxes. If the Debtor fails to pay Alliance Bank, Alliance Bank can exercise its remedies under its loan documents.

The Trustee will take appropriate steps to attempt collect the past due rent from McMahon's Steakhouse and Old Pueblo Grill. Both entities are in a Chapter 11. The Trustee will evaluate the collectiblity of any other receivables identified by the Debtor.

The Trustee will also evaluate the marketability of the Debtor's membership interests in limited liability companies and determine if those interests can be sold to fund the Plan.

**IX.**       **GENERAL PROVISIONS**

A. **Confirmation Without Acceptance By All Impaired Classes.**

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired class of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

If a class of impaired claim(s) rejects the Amended Plan, The Trustee reserves the right to seek confirmation of this Amended Plan by a "cram-down" of such non-accepting class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Court declines to impose a cram-down on a non-accepting class unless certain modifications are made to the terms and conditions of such class's treatment under this Amended Plan, the Trustee reserves the right, without re-solicitation to the extent permitted by the Code, to propose such modifications and to confirm this Amended Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

B       **Provisions For The Assumption Or Rejection Of**
        **Executory Contracts And Unexpired Leases**

The Trustee will assume or reject leases and executory contracts of the Debtor prior to the Effective Date.

C.       **VESTING OF PROPERTY**

- 13 -

On the Effective Date of the Amended Plan, except as otherwise provided herein, the funds held by the Trustee will be disbursed to Allowed Administrative Claims in full, and the Trustee will pay other claims as set forth in the Amended Plan or in the order confirming the Amended Plan.

D.    **Retention Of Jurisdiction**

The Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or objections thereto and for any other purpose which is contemplated in the Amended Plan or which will otherwise assist in the consummation of the Amended Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any claims or administrative expenses. The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Amended Plan. In addition, the Court shall retain jurisdiction for the following purposes:

(1)    The classification of any claim or interest, the determination of such objections as may be filed to claims, or interests, and the re-examination of the allowance of any claim or interest.

(2)    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Amended Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Amended Plan.

(3)    To enforce and interpret the terms and conditions of this Amended Plan.

(4)    Entry of any order, including injunctions, necessary to enforce the title, rights and powers of Debtor and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

(5)    Determination of any claims asserted by the Trustee against any other person or entity, including but not limited to any right of the Trustee to recover assets pursuant to the provisions of Title 11, if such claim is pursued in the Court prior to the closing of the case. The Trustee does not contemplate that litigation will be necessary after the Effective Date of the Amended Plan. However, the Trustee reserves the right to object to any claim for a period up to and including sixty (60) days following the Effective Date of the Amended Plan, and to thereafter pursue any

- 14 -

litigation that may arise therefrom.

        (6)    Determination of all questions and disputes concerning the sale, lease, or other transfer of property of Debtor.

        (7)    Entry of a Final Decree closing this case.

        (8)    Granting the Debtor a discharge.

Notwithstanding anything to the contrary contained herein, the Trustee shall not be bound by estoppel, the principal of res judicata or collateral estoppel with respect to any term of provision contained herein in the event the Amended Plan is not confirmed as set forth herein.

## X.    EFFECT OF CONFIRMATION

Confirmation of this Amended Plan shall constitute a discharge of any debt that arose prior to Confirmation, including, but not limited to, all principal and any interest accrued thereon, pursuant to §1141(d)(1) of the Bankruptcy Code, other than those liabilities expressly to be assumed hereby by the reorganized Debtor.

## XI.    TAX CONSEQUENCES

Implementation of the Amended Plan may have significant tax consequences to the Debtor, its members and the creditors. SAID PERSONS AND ENTITIES SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF IMPLEMENTATION OF THE AMENDED PLAN.

## XII    CONFIRMATION HEARING AND VOTING INSTRUCTIONS

The time and date of the hearing is set forth in the Order which accompanies this Amended Disclosure Statement. Claimants may vote on the Amended Plan by filling out and signing the ballot for accepting or rejecting the Amended Plan ("Ballot") accompanying this Amended Disclosure Statement and filing and/or sending the Ballot as directed in the Order Approving this Amended Disclosure Statement transmitted herewith. In order for claimants' votes to count, the ballots must be received at least five (5) business days before that hearing date. As a claimant, your vote is important. For a class of creditors' claims to accept the Amended Plan, acceptances must be filed by at least two-thirds (2/3) in amount and more than one-half (½) in number of the allowed claims of each class that actually vote on the Amended Plan. A failure to vote on the Amended Plan does not

- 15 -

1  constitute either an acceptance or rejection of the Amended Plan. The Court will hold a hearing on

2  the confirmation of the Amended Plan and will enter an Order of Confirmation with respect to the

3  Amended Plan if it finds that, among other things, all payments to be made by the Trustee in

4  connection with the case or Amended Plan have been disclosed.

5       In the event that the requisite acceptance of impaired classes of claims and interests are not

6  obtained, pursuant to Section 1129(b)(1) of the Bankruptcy Code, the Court may nevertheless confirm

7  the Amended Plan upon the request of the proponent of the Amended Plan if the Court finds that the

8  Amended Plan does not discriminate unfairly and accords fair and equitable treatment to the class

9  rejecting it.

10      At the hearing on confirmation of the Amended Plan the Court will hear any timely filed

11  objection from a claimant or interest holder to confirmation of the Amended Plan.

12  **XIII.   RECOMMENDATION OF TRUSTEE**

13      The Trustee recommends the Amended Plan be approved. The Trustee is of the opinion that

14  the Amended Plan's approval is in the best interest of all creditors.

15      RESPECTFULLY SUBMITTED this 19th day of November, 2014.

16                      McEVOY, DANIELS & DARCY, P.C.

17

18                  By: /s/Sally M. Darcy
                          Sally M. Darcy
19                        Attorney for Trustee

20

21

22

23

24

25

26

27

28

- 16 -

# EXHIBIT "1"

**McEVOY, DANIELS & DARCY, P.C.**
Camp Lowell Corporate Center
4560 East Camp Lowell Drive
Tucson, Arizona 85712
Telephone:    (520) 326-0133
Fax:    (520) 326-5938

Sally M. Darcy
darcysm@aol.com
Attorney for Trustee

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| MCMAHON PROPERTIES, LLC, | ) | Case No. 4:14-bk-00092-BMW |
| | ) | |
| | ) | |
| | ) | |
| | ) | **TRUSTEE'S AMENDED PLAN OF** |
| | ) | **REORGANIZATION** |
| | ) | **DATED OCTOBER 27, 2014** |
| Debtor. | ) | |
| | ) | |
| | ) | |

## Article I

## Introduction

Christopher Linscott, the duly appointed Chapter 11 Trustee ("Trustee) submits his Amended Plan of Reorganization dated October 27, 2014 ("Amended Plan") in accordance with 11 U.S.C. §1121(a). The Trustee contends that the Amended Plan contains non-adverse modifications to the plan dated July 29, 2014. In the event the Court determines there are impaired classes, and votes are insufficient for confirmation pursuant to 11 U.S.C. §1129(a), the Trustee requests the Bankruptcy Court for the District of Arizona (the "Court") to confirm the Amended Plan pursuant to 11 U.S.C. §1129(b).

## Article II

## Definitions

As used in the Amended Plan, the following terms shall have the respective meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of

the terms defined, unless the context requires otherwise. Terms that are defined by the Bankruptcy Code shall have the meaning defined by the Bankruptcy Code unless specifically modified herein. All terms not specifically defined by this Amended Plan shall have the meaning designated in the Bankruptcy Code, or, if not defined therein, their ordinary meaning. These definitions are a substantial and operative part of the Amended Plan.

a. **"Administrative Claims"** shall mean any Allowed Claim that is defined in §503(b) of the Code as being an "administrative expense" within the meaning of such section.

b. **"Administrative Expense"** means any claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with Code §503(b), including without limitation:

    i. the actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor (other than such claims or portions thereof which, by their express terms, are not due or payable by the Effective Date);

    ii. the full amount of all claims for allowance of compensation for legal or other professional services or reimbursement of costs and expenses under Code §§330 or 503(b) or otherwise allowed by the Court;

    iii. all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

c. **"Allowed Claim"** shall mean (a) a Claim allowed by a final order; (b) a Claim as to which a timely and proper proof of claim or application for payment has been filed and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections; or (c) a Claim allowed under the Amended Plan, notwithstanding any objection filed thereto by any Person.

d. **"Avoidance Actions"** mean any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under section 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which may be released or dismissed as part of and pursuant to the Amended Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

- 2 -

e.     **"Bankruptcy Rules"** shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Court and local rules applicable to cases pending in the Court, as the same may from time to time be in effect and applicable to proceedings under the Amended Plan.

f      **"Case"** shall mean the Chapter 11 case commenced by the filing with the Court on January 3, 2014, of a voluntary petition for relief under Chapter 11 of the Code by Debtor, which petition is assigned Case No 14-00092-BMW.

g.     **"Causes of Action"** means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, cross claims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Trustee, including, but not limited to, the Avoidance Actions.

h.     **"Chapter 11"** shall mean Chapter 11 of the Code, 11 U.S.C. §1101 et. seq.

I.     **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

j      **"Code"** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §101, et seq.

k.     **"Confirmation Date"** shall mean the date on which the Court enters the confirmation order.

l.     **"Court"** shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

m.     **"Effective Date of the Amended Plan"** shall mean the later of (I) the first business day following the thirtieth day after entry by the Court of an Order confirming this Amended Plan, or (ii) the first business day after such Order has become final and unappealable; provided, no appeal of said Order is pending.

- 3 -

n.  "**Excess Net Cash Flow**" shall mean any Net Cash Flow of the Debtor during any period, less amounts payable to the holders of the Class 4 and 5 Claims under the terms of the Amended Plan.

o.  "**Exculpated Persons**" means the Trustee, and his employees, agents, partners, attorneys, advisors and professionals.

p.  "**Insider**" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

q.  "**Interests**" means any and all equity interests, ownership interests or share in the Debtor issued prior to the Petition Date, whether or not certificated, transferable, voting or denominated stock or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

r.  "**Net Cash Flow**" shall mean, for any period, an amount equal to the gross receipts of the Debtor during such period with respect to the business, computed on the cash basis, reduced by all expenditures of the Debtor during such period with respect to the business which expenditures shall include, without limitation, (a) payment of all operating expenses of the debtor, and (b) capital expenditures, if any, by the Debtor with respect to the business to the extent not paid out of the proceeds of capital receipts, or out of the proceeds of contributions to the capital of the Debtor or loans by the Debtor's members or third-party to the Debtor; provided, however, that the aggregate of any such capital expenditures paid out of gross receipts shall be reasonable and appropriate for operation of the Business.

s.  "**Outstanding Principal**" shall mean an amount equal to the sum of (1) the fair market value of the real assets of the Debtor as of the Effective Date; less (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to the Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claim between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the effective Date which may be claimed or provided for under the Note. The Outstanding Principal shall also not include any attorneys' fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective Date, except to the extent permitted under Bankruptcy Code Section 506.

- 4 -

t. **"Personal Property"** means the personal property owned by the Debtor on the Petition Date and as identified on the Debtor's Schedule B and identified in the Disclosure Statement..

u. **"Petition Date"** shall mean, January 3, 2014, the date Debtor filed its voluntary petition under Chapter 11 of the Code with this Court.

v. **"Amended Plan"** shall mean the Trustee's Amended Plan of Reorganization proposed by the Trustee and dated October 27, 2014, and as may be further amended, modified or supplemented from time to time.

w. **"Plan Fund"** shall mean a fund of money to be deposited into an interest bearing deposit account for the exclusive use by the Trustee or Property Manager to pay Claims. The Plan Fund shall be initially funded from all cash on hand as of the Effective Date, less funds required to pay claims payable as of the Effective Date in accordance with the Amended Plan. On or before the 20th day of each month, the Trustee or Property Manager shall deposit all Excess Net Cash Flow less payments to the Class 4 and 5 claimants into the Plan Fund. In addition, all Net Cash Sale Proceeds from the sale of assets other than in the ordinary course of business shall be deposited into the Plan Fund.

x. **"Property"** means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in Section 541 of the Bankruptcy Code.

## Article III

### Summary of the Amended Plan

The Bankruptcy was filed on January 3, 2014. The Amended Plan provides for modification of the terms of the Debtor's obligations to its creditors, but provides for full payment of all allowed claims within six years of the Effective Date.

## Article IV

### A. Classification And Treatment Of Claims And Interests

All Allowed Claims and Allowed Interests are placed in the classes described below. The Amended Plan divides all claims into 7 separate classes All impaired classes of claims and interests

- 5 -

shall receive the distributions set forth in this section on account of and in complete satisfaction of all such Allowed Claims (and any interest). Without limiting the foregoing and upon the Effective Date, each creditor and each equity security holder (or its successor) shall be deemed to have waived, relinquished and released any and all of its rights and claims against the Debtor (other than as provided for in the Amended Plan or the Court's Order confirming the Amended Plan), and all defaults to the creditors shall be deemed cured. In accordance with 11 U.S.C. § 1122, all claims against the Debtor and/or estate of the Debtor are classified as follows:

**Class 1** – Administrative Claims. Administrative expenses are those that have been incurred since the initiation of this bankruptcy. The Bankruptcy Code at § 507(a)(1) provides that administrative expenses are entitled to a first priority in payment. Administrative expenses are those set forth in § 503 of the Bankruptcy Code and are estimated to include the following:

a. U.S. Trustee Fees (unknown, believed to be zero). Any amounts owing will be paid on the Effective Date, before payments to unsecured creditors. Post-confirmation reports will be filed and post-confirmation fees will be paid until the case is closed.

b. McEvoy, Daniels & Darcy, PC. Unpaid attorneys fees and costs for Trustee's attorneys will be paid on the Effective Date or as agreed upon by the parties. The fees and costs incurred to date are approximately $30,000.00. It is anticipated that on the Effective Date the fees and costs will be approximately $45,000.00.

c. Post-petition expenses incurred by the Debtor and Trustee have been paid as they have been incurred in the ordinary course of business. To the extent they have not been paid or provided for, they will be paid on the Effective Date or as agreed upon by the parties.

d. Chapter 11 Trustee's Fees. and costs as provided for by the Bankruptcy Code. The Trustee estimates the administrative claims will be $75,000-100,000.

This class does not vote.

**Class 2** consists of all Claims that are entitled to priority under Bankruptcy code § 507(A)(3) through (10), other than real property tax claims to whatever extent (if any) that such claims exist. Every class 2 Claim, other than real property taxes, shall be paid in full, and in cash, upon the Effective Date.

- 6 -

Class 2 claims are not impaired under the Amended Plan.

**Class 3** consists of the real property tax claims under § 507(a)(8) which shall be paid, with interest at the statutory rate, in semi-annual installments, or sooner, from the Plan Fund, as such funds are available, but no later than a date that is five years from the date of the Order for relief commencing this case. The Trustee anticipates paying these claim on the Effective Date. Payment, in full, on the Effective Date is dependent on the closing of the Tanque Verde Property prior to the Effective Date. In the event the Tanque Verde Property does not close prior to the Effective Date, the real property taxes will be paid in full, not later than five years from the Petition Date.

Class 3 claims are impaired under the Amended Plan.

**Class 4** consists of the secured claim of, Alliance Bank, and assuming it does not make the 1111(b) election, its Allowed Claim will be set at $5,600,000.00. Commencing on the first day of the first calendar month following the Effective Date, the Outstanding Principal (as defined in the Amended Plan) of the Class 4 Claim, shall accrue simple interest at the rate of 5.25% per annum or such amount as may be set by the Court. The Allowed Claim shall be paid: (I) first, in monthly installments of interest-only for a period of one (1) year, and then (ii) in equal monthly installments amortized over a period of 25 years with the entire amount of the Outstanding Principal of the Class 4 Claim, together with any accrued and unpaid interest thereon due and payable upon the 6th anniversary of the Effective Date. The amortization schedule for the Class 4 Claim is attached hereto as Exhibit "7." On the 6th anniversary of the Effective Date, the Allowed Claim will be paid upon a sale of the Swan Property or a refinance of the Swan Property.

In addition to the above, the Debtor shall reserve for real property taxes by making monthly payments to Alliance Bank in the amount necessary to pay the real property taxes when due, which amount shall be held in reserve by Alliance Bank and Alliance Bank shall pay the real property taxes from said account when due.

Alliance Bank will receive interest payments totaling $294,000 the first year.

In the event Alliance Bank makes the 1111(b) Election its claim will be satisfied in 10 years as follows:

Its Allowed Claim shall be reduced by the cash collateral payments paid from the Petition

- 7 -

Date through the Effective Date, which will be not less than $171,264.18. The balance of its Allowed Claim shall be paid in the same manner as if it had not made the 1111(b) election.

The Class 4 Claim is impaired under the Amended Plan.

**Class 5** consists of the secured claim of National Bank. The Class 4 Claim shall be paid in accordance with the Stipulation Between The Trustee and National Bank of Arizona Re Use of Cash Collateral which was filed with the Court and is attached hereto as Exhibit "3." The Class 5 Claim shall be paid according to the loan documents at the non-default contract rate of interest. The Class 5 claim shall be paid in full on the due date, September 6, 2017, unless the option has not been exercised. In that event, the Class 5 claim shall be paid in full on August 31, 2018 with interest accruing after September 6, 2017 at the greater of the non-default contract interest rate or 5%. The Class 5 Claim is impaired under the Amended Plan.

**Class 6** consists of the general unsecured Claims. The Class 6 claims shall be paid in full, in cash, in semi-annual installments, without interest, in a pro rata amount from the Plan Fund. Class 6 Claims shall not include any interest charges, fees, or other costs incurred or assessed after the Petition Date through and including the Effective Date. The Trustee projects that the Class 6 Claims will be paid in full within seven (7) years of the Effective Date.

The Class 6 Claims are impaired.

**Class 7** Claims consist of the equity ownership interest of the members of the Debtor. The membership interest of the existing members of the Debtor shall not receive anything on account of their interests unless or until the Class 6 claims are paid in full.

The Class 7 Claims are impaired under the Amended Plan.

**B. Provisions For Execution Of The Amended Plan**

The Amended Plan proposes that, upon confirmation, ownership of the assets of the Chapter 11 estate be vested in the Debtor, and the Debtor shall operate and manage the business. The Amended Plan authorizes the Debtor to pay ordinary and necessary operating expenses in order to maintain a viable operation, including a reasonable salary to the employees of the Reorganized Debtor. No members, officers or directors of the Debtor are to receive any compensation for services rendered to the Debtor in connection with this reorganization case.

- 8 -

The Trustee has prepared an estimate of his source of post-confirmation income and expenses. The Trustee estimates annual net income available for funding the Amended Plan, after payments of taxes and secured debt of approximately $4,000.00 per month. A copy of the Trustee's projections is attached to the Disclosure Statement. Based upon these projections, the Trustee believes that the Class 6 creditors will be paid in a period of not more than five years.

On the Effective Date, the Trustee shall establish a Plan Fund consisting of a separate segregated interest-bearing deposit account into which the Trustee shall deposit funds for distribution to Class 3 and 6 claimants as required by the Amended Plan. The Plan Fund shall be funded initially from cash funds in the Trustee's possession on the Effective Date (including certain proceeds from the funding of the Option Agreement for the Tanque Verde Property), less funds required to be paid under the Amended Plan on the Effective Date and an Operating Reserve of $50,000.00. On or before the last Business Day of each calendar year following the Effective Date, the Debtor shall deposit into the Plan Fund the Excess Net Cash Flow received during the prior calendar year. All funds in the Plan Fund will be disbursed semi-annually, first to the holders of Class 3 Claims, and then to the holders of the Class 6 Claims, as provided in the Amended Plan. The Trustee will remain in control of the Plan Fund until the $445,000.00 paid under the Option Agreement is disbursed pursuant to the terms of the Amended Plan.

## Article V

### General Provisions

#### A. Confirmation Without Acceptance By All Impaired Classes

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired classes of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

If a class of impaired claim(s) rejects the Amended Plan, the Trustee reserves the right to seek confirmation of this Amended Plan by a "cram-down" of such non-accepting class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Court declines to impose a cram-down on a non-accepting class unless certain modifications are made to the terms and conditions of such

- 9 -

class's treatment under this Amended Plan, the Trustee reserves the right, without re-solicitation to the extent permitted by the Code, to propose such modifications and to confirm this Amended Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

**B. Provisions for the Assumption or Rejection of Executory Contracts and Unexpired Leases**

Unless rejected prior to the Effective Date or under the Amended Plan, the Trustee hereby expressly assumes all executory contracts to which the Debtor is a party, including, without limitation, any unexpired leases. The Trustee expressly rejects the following executory contracts: None.

**C. Trustee's Causes of Action**

The Trustee shall retain all of Debtor's Causes of Action, including any potential Avoidance Causes of Action. The Trustee does not believe there are any Avoidance Actions, including, but not limited to preferential transfers under Section 547 of the Bankruptcy Code or fraudulent transfers under Section 548 of the Bankruptcy Code

**D.    Vesting of Property**

On the Effective Date of the Amended Plan, except as otherwise provided herein, or in the Confirmation Order, the Debtor shall be vested with its real and personal property or assets from its estate, free and clear of all liens, charges, and other interests of creditors arising prior to the Petition Date, except as provided by the Amended Plan of Reorganization.

**E.    Retention of Jurisdiction**

The Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or objections thereto and for any other purpose which is contemplated in the Amended Plan or which will otherwise assist in the consummation of the Amended Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any claims or administrative expenses. The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Amended Plan. In addition, the Court shall retain jurisdiction for the following purposes:

- 10 -

(1)     The classification of any claim or interest, the determination of such objections as may be filed to claims, or interests, and the re-examination of the allowance of any claim or interest.

(2)     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Amended Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Amended Plan.

(3)     To enforce and interpret the terms and conditions of this Amended Plan.

(4)     Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Trustee and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

(5)     Determination of any claims asserted by the Trustee against any other person or entity, including but not limited to such rights the Trustee may have had to recover assets pursuant to the provisions of Title 11, if such claim is pursued in the Court prior to the closing of the case.

(6)     Determination of all questions and disputes concerning the sale, lease, or other transfer of property of the Debtor.

(7)     Entry of a Final Decree closing this case.

Notwithstanding anything to the contrary contained herein, the Trustee shall not be bound by estoppel, the principal of res judicata or collateral estoppel with respect to any term of provision contained herein in the event the Amended Plan is not confirmed as set forth herein.

## Article VI

### Effect of Confirmation

Confirmation of this Amended Plan shall constitute a discharge of Claims against the Debtor. Under the terms of the Trustee's Amended Plan, no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtor's respective successors or their respective property, except as expressly provided herein. Except as otherwise

- 11 -

provided herein, the Confirmation Order shall provide, among other things, that no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from or, seek recourse against, the Debtor, or its respective successors or their respective property, except as expressly set forth herein.

## Article VII

### Exculpation and Limitation of Liability

The Trustee, his managers, employees, agents, partners, attorneys, advisors and professionals (collectively, the "Exculpated Parties") shall not have or incur any liability to any Person for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the formulation, negotiation, implementation, confirmation or consummation of this Amended Plan, the Amended Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during th Chapter 11 Case or otherwise created in connection with this Amended Plan, provided, however, that nothing in this section shall be construed to release or exculpate any Exculpated Party from willful misconduct or gross negligence as determined by a Final Order, or from compliance with Amended Plan provisions.

Upon entry of the Confirmation Order, all holders of Claims and Interest and other parties in interest, along with their respective present or former employees, members, agents, officers, directors, or principals, shall be enjoined from taking any action to interfere with the implementation or Consummation of the Trustee's Amended Plan.

## Article VIII

### Acceptance of the Trustee's Amended Plan

**A. Voting**

As a condition to confirmation, the Bankruptcy Code requires that each Class of impaired Claims and interests vote to accept the Trustee's Amended Plan, except under certain circumstances. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired Claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of Claims in that Class, but for that purpose counts only those who actually vote to accept or to reject the Trustee's Amended Plan. Thus, a Class of Claims will have voted to accept the Trustee's

- 12 -

Amended Plan only if two-thirds in amount and a majority in number actually vote and cast their Ballots in favor of acceptance. Under Section 1126(d) of the Bankruptcy Code, a Class of Interest has accepted the Trustee's Amended Plan if holders of such Interest holding at least two-thirds in amount actually voting have voted to accept the Trustee's Plan. Holders of Claims or interests who fail to vote are not counted as either accepting or rejecting the Trustee's Amended Plan.

## B. Best Interests Test

Even if a is accepted by each class of holders of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that the Amended Plan is in the "best interest" of all holders of claims and interests that are impaired by the Amended Plan and that have not accepted the Amended Plan. The "best interest" test, as set forth in Section 1129(a)(7) requires a bankruptcy court to find either that (I) all members of an impaired class of claims or interest have accepted the Amended Plan or (ii) the Amended Plan will provide a member who has not voted to accept the Amended Plan with a recovery of property of a value, as of the effective date of the Amended Plan that is not less than the amount that such holder would recover if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Trustee believes this provision has been met.

## Article IX

## Tax Consequences

Implementation of the Amended Plan may have significant tax consequences to the creditors. SAID PERSONS AND ENTITIES SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF IMPLEMENTATION OF THE AMENDED PLAN.

## Article X

## Avoidance of Judgment Liens

In the event any creditor has recorded a judgment lien encumbering the Debtor's Property, the lien shall be null and void.

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Article XI

### Management

The Trustee has determined that a property manager is not necessary and would only add another layer of expense. The Reorganized Debtor will manage the estate. The tenant of the Tanque Verde Property will be responsible for the utilities and the real property taxes, and will pay National Bank of Arizona directly. Payment to Alliance Bank include the monthly loan payment, and a reserve for real property taxes. If the Debtor fails to pay Alliance Bank, Alliance Bank can exercise its remedies under its loan documents.

## Article XII

### Permanent Injunction

The Confirmation Order shall forever enjoin the commencement or continuation of any action, or the employment of process, against the Debtor or its Property, with respect to any debt or claim discharged under the Amended Plan. The Confirmation Order shall further enjoin any of the creditors from taking any action to prevent the Trustee or the Debtor from effectuating the provisions of the Amended Plan.

## Article XIII

### Allowance of Claims

Notwithstanding any other provision of the Amended Plan, each claim shall be paid only after it has been allowed in accordance with the Code.

## Article XIV

### Withdrawal of Amended Plan

At the option of the Trustee, the Amended Plan may be withdrawn at any time prior to the Effective Date of the Amended Plan. Such option shall be exercised by the filing in the case of a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case. If such option is timely and properly exercised, the case shall continue and be administered as if the Amended Plan had been withdrawn prior to the confirmation.

- 14 -

## Article XV

### Recommendation of the Trustee

The Trustee recommends the Amended Plan be approved. The Trustee is of the opinion that the Amended Plan's approval is in the best interest of all creditors.

RESPECTFULLY SUBMITTED this 19th day of November, 2014.

McEVOY, DANIELS & DARCY, P.C.

By: /s/ Sally M. Darcy
Sally M. Darcy
Attorney for the Trustee

- 15 -

# EXHIBIT "2"

Arizona Corporation Commission

07/30/2014

State of Arizona Public Access System

7:49 AM

Jump To...

Scanned Documents    Microfilm

| Corporate Inquiry | |
| --- | --- |
| **File Number: L-0812541-8    LATEST DATE TO DISSOLVE** 07/01/2047 | Check Corporate Status |
| **Corp. Name: MCMAHON PROPERTIES, L.L.C.** | |

### Domestic Address

| |
| --- |
| 4644 E FT LOWELL RD |
| TUCSON, AZ 85712 |

### Statutory Agent Information

| |
| --- |
| **Agent Name:** ROBERT L GUGINO |
| |
| **Agent Mailing/Physical Address:** |
| 4564 E CAMP LOWELL DR |
| TUCSON, AZ 85712-1282 |
| |
| **Agent Status:** APPOINTED 07/24/1997 |
| **Agent Last Updated:** 03/30/2006 |

### Additional Corporate Information

| | |
| --- | --- |
| Corporation Type: DOMESTIC L.L.C. | Business Type: UNKNOWN |
| Incorporation Date: 07/24/1997 | Corporate Life Period: |
| Domicile: ARIZONA | County: PIMA |
| Approval Date: 07/25/1997 | Original Publish Date: 08/13/1997 |
| Status: LATEST DATE TO DISSOLVE | Dissolution/Withdrawal Date: 07/01/2047 |

### Manager/Member Information

| | |
| --- | --- |
| ROBERT B MCMAHON<br>MANAGER<br>7493 N ORACLE RD STE 203<br>TUCSON, AZ  85704<br>**Date of Taking Office:** 07/24/1997<br>**Last Updated:** 09/03/1997 | DANITA A MCMAHON<br>MANAGER<br>7493 N ORACLE RD STE 203<br>TUCSON, AZ  85704<br>**Date of Taking Office:** 07/24/1997<br>**Last Updated:** 09/03/1997 |
| ROBERT B MCMAHON<br>MEMBER | DANITA A MCMAHON<br>MEMBER |

```
7493 N ORACLE RD STE 203        7493 N ORACLE RD STE 203
TUCSON,AZ 85704                 TUCSON,AZ 85704
Date of Taking Office: 07/24/1997  Date of Taking Office: 07/24/1997
Last Updated: 09/03/1997        Last Updated: 09/03/1997
```

## Scanned Documents

**(Click on gray button - if present - to view document - will open in a new window.)**

**(If gray button is not present, please check back later.)**

| Document Number | Description | Date Received |
|---|---|---|
| 01450229 | AGENT ADDRESS CHANGE | 01/19/2006 |

Back To Top

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 11157017043 | 07/24/1997 | ARTICLES OF ORGANIZATION |
| 20211029003 | 08/13/1997 | PUBLICATION OF ARTICLES OF ORGANIZATION |
| 20297060038 | 09/24/2001 | CORP ADDRESS CHG |
| 31966004414 | 01/19/2006 | AGENT ADDRESS CHANGE |

Back To Top

* Corporate Name Search Instructions
* General Web Site Usage Instructions
* STARPAS Main Menu
* A.C.C. Corporations Division Main Page
* Arizona Corporation Commission Home Page

# EXHIBIT "3"

McEvoy Daniels & Darcy,
4560 East Camp Lowell Drive
Tucson, Arizona 85712
Telephone: (520) 326-0133
Fax: (520) 326-5938

Sally M. Darcy
darcysm@aol.com
Attorney for Chris Linscott, Chapter 11 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| McMAHON PROPERTIES, LLC, | Case No. 4:14-bk-00092-BMW |
| | **STIPULATION BETWEEN THE TRUSTEE AND NATIONAL BANK OF ARIZONA RE USE OF CASH COLLATERAL** |
| Debtor. | |

Pursuant to *11 U.S.C. §§361 and 363 and Rule 4001, Fed. R. Bankr. Proc.*, Christopher Linscott, the Chapter 11 Trustee, and National Bank of Arizona ("NBA"), by and through counsel undersigned, stipulate and agree as follows:

1. McMahon Properties, LLC, Debtor, filed its Chapter 11 Petition on January 3, 2014.

2. Christopher Linscott was appointed as the Chapter 11 Trustee ("Trustee") on April 29, 2014.

3. On November 29, 2007, the Debtor signed a promissory note in the amount of $1,594,846.33 ("Note") payable to NBA. The Note is secured by, among other things, a Deed of Trust and Fixture Filing dated September 6, 2007, and recorded on September 10, 2007, at Docket 13136, Page 1591, Sequence No. 20071750462, Official Records of the Pima County Recorder, Arizona, as modified by the Modification of Deed of Trust dated November 29, 2007, and recorded on December 19, 2007, at Docket 13205, Page 2009, Sequence No. 20072440456, Official Records of the Pima Count Recorder ("Deed of Trust").

4. The Deed of Trust encumbers real property commonly known as 6464 East Tanque Verde Road, Tucson, Arizona ("Tanque Verde Property").

5. NBA also retains an interest in a Bancontrol account containing approximately $37,000.00.

6. On June 23, 2014, the Court approved an Option Contract for Possible Sale of Real Property Free and Clear of Liens ("Option Contract") which provided, among other things, that 6464 Tucson, LLC, as Tenant ("Tenant"), would lease the Tanque Verde Property with an option to purchase the Tanque Verde Property. The Option Contract, among other things, requires the Tenant to pay the Trustee $450,000.00 ("Claimed Cash Collateral") upon taking possession of the Tanque Verde Property.[1]

7. The Trustee and NBA each claim an interest in the Claimed Cash Collateral. NBA and the Trustee agree that it is in the best interest of the Debtor's estate and its creditors that the Trustee be allowed the use of the Claimed Cash Collateral, subject to the terms of this Stipulation.

8. Upon the Trustee's receipt of the Claimed Cash Collateral, the Trustee and NBA stipulate and agree as follows:

    a. NBA shall retain its security interest in the Bancontrol Account. The Bancontrol Account has a current balance of approximately $37,000.00. NBA shall withdraw approximately $12,000.00 from the Bancontrol Account and apply it to the principal and/or non-default contract interest due NBA. Upon payment in full of NBA's allowed claim, the funds remaining in the Bancontrol Account shall be returned to the Debtor.

    b. The Trustee shall pay NBA from the Claimed Cash Collateral a sum equal to the amount necessary to pay current the principal and non-default contract interest due NBA, after application of the $12,000.00 from the Bancontrol Account.

    c. The Trustee shall pay NBA $31,000.00 as and for that portion of its allowed claim related to its legal and appraisal fees.

    d. The Trustee shall pay the delinquent real property taxes encumbering the Tanque Verde Property, which the Trustee estimates to be $15,000.00.

---

[1] Due to a dispute between the Debtor and the Tenant regarding the personal property, the Trustee has agreed to provide the Tenant with a credit of $5,000.00.

- 2 -

1          e. A copy of the Trustee's proposed budget to pay NBA is attached hereto as Exhibit

2 "1."

3          f.. The Trustee shall remain in control of all future distributions of the Claimed Cash

4 Collateral, which shall be used, in the Trustee's discretion, according to a confirmed Plan of

5 Reorganization or order of the Court.

6          g. The Tenant shall be required to pay rent directly to NBA, with a copy evidencing

7 the payment to the Debtor.

8      9. The Trustee and NBA agree that NBA is adequately protected.

9          RESPECTFULLY SUBMITTED this 4th day of September, 2014.

10                McEVOY, DANIELS & DARCY, P.C.

11                By:_____/s/Sally M. Darcy_____
                        Sally M Darcy

12                      Attorney for Chapter 11 Trustee

13

14                JENNINGS, HAUG & CUNNINGHAM, LLP

15                By_____/s/Matthew H. Sloan_____
                        Matthew H. Sloan

16                      Attorneys for NBA

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

**McMahon Properties, LLC**
**Application of Tanque Verde Proceeds**

| Description | | Amount |
|---|---|---|
| Proceeds from Tenant less credit | $ | 445,000 |
| Bancontrol funds to be utilized | $ | 12,000 |
| Less: | | |
|    Payment of past due Principal and Interest | $ | (84,000) |
|    Payment of Bank Legal and Appraisal Fees | $ | (31,000) |
|    Payment of Delinquent Property Tax | $ | (15,000) |
| Net Funds Available to Bankruptcy Estate | $ | 327,000 |

# EXHIBIT "4"

McMahon Properties, LLC
Related Party Receivables as of the Petition Date

| Entity | Unsecured | Rent | Total | Comments |
|---|---|---|---|---|
| Metro Restaurants, Inc. | $ 384,649.81 | $ 8,694.56 | $ 393,344.37 | Entity in Chapter 7 - Collection Doubtful |
| McMahon's Steakhouse, LLC | 37,911.55 | 52,550.00 | 90,461.55 | Entity in Chapter 11 - Assumed Collectible |
| Old Pueblo Grill, LLC | 8,532.09 | - | $ 8,532.09 | Entity in Chapter 11 - Assumed Collectible |
| Metropolitan Grill, LLC | 2,054.50 | - | $ 2,054.50 | Entity in Chapter 7 - Collection Doubtful |
| Torres Blancas Golf Course | 13,715.00 | - | $ 13,715.00 | Troubled Entity - Collection Doubtful |
| Total Related Party Receivables | | | $ 508,107.51 | |
| Third Party Rent Receivables | | | $ 46,093.34 | Assumed Collectible |
| Total Receivables | | | $ 554,200.85 | |

# EXHIBIT "5"

IN RE MCMAHON PROPERTIES, LLC                                    Case No. 4-14-bk-00092-BMW
_____                                    _____
            Debtor(s)                                                        (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**A.I.S., Inc.**<br>**4300 S Station Master Dr**<br>**Tucson, AZ  85714-3293** | | | | | | | 700.00 |
| ACCOUNT NO.<br>**All American Pest Control**<br>**PO Box 31988**<br>**Tucson, AZ  85751-1988** | | | | | | | 710.00 |
| ACCOUNT NO.<br>**Beach Fleischman PC**<br>**PO Box 64130**<br>**Tucson, AZ  85728-4130** | | | | | | | 3,925.00 |
| ACCOUNT NO.<br>**CB Richard Ellis, Inc.**<br>**File 056411 Location 2158**<br>**Los Angeles, CA  90074** | | | | | | | 9,794.01 |

_2_ continuation sheets attached

| | Subtotal<br>(Total of this page) | $ 15,129.01 |
|---|---|---|
| | Total<br>(Use only on last page of the completed Schedule F. Report also on the Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ |

IN RE MCMAHON PROPERTIES, LLC                    Case No. 4-14-bk-00092-BMW
_____                  _____
                Debtor(s)                              (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br> City Of Tucson Water <br> PO Box 28804 <br> Tucson, AZ 85726-8804 | | | | | | | 1,459.99 |
| ACCOUNT NO. <br> Phillips Plumbing <br> PO Box 32523 <br> Tucson, AZ 85751-2523 | | | | | | | 110.53 |
| ACCOUNT NO. <br> Roadrunner Lock & Safe <br> 4444 E Grant Rd Ste 112 <br> Tucson, AZ 85712-2647 | | | | | | | 104.87 |
| ACCOUNT NO. <br> Swisher <br> PO Box 473526 <br> Charlotte, NC 28247-3526 | | | | | | | 575.53 |
| ACCOUNT NO. <br> The Sage Tax Group, Inc. <br> 1773 E. Prince Rd. <br> Tucson, AZ 85719 | | | | | | | 8,469.05 |
| ACCOUNT NO. <br> Truly Nolen Exterminating <br> 3620 E Speedway Blvd # 110 <br> Tucson, AZ 85716-4018 | | | | | | | 60.00 |
| ACCOUNT NO. <br> Tucson Backflow <br> PO Box 57341 <br> Tucson, AZ 85732-7341 | | | | | | | 165.00 |

Sheet no. __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)  $ 10,934.97

Total
(Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)  $

*© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only*

IN RE MCMAHON PROPERTIES, LLC                                    Case No. 4-14-bk-00092-BMW
_____
                    Debtor(s)                                        (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br> **Tucson Electric Power** <br> **PO Box 80077** <br> **Prescott, AZ 86304-8077** | | | | | | | 780.21 |
| ACCOUNT NO. <br> **United Fire Equipment Co.** <br> **335 N 4th Ave** <br> **Tucson, AZ 85705-8442** | | | | | | | 50.00 |
| ACCOUNT NO. <br> **Watson Refrigeration** <br> **4717 S Irving Ave** <br> **Tucson, AZ 85714-2113** | | | | | | | 5,090.20 |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no. ___2___ of ___2___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    $ 5,920.41

Total
(Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)    $ 31,984.39

© 1993-2013 EZ-Filing, Inc. (1-800-998-2424) - Forms Software Only

# EXHIBIT "6"

# LIQUIDATION ANALYSIS

| PROPERTY | FMV | LIENS | EQUITY<br>< 20% reduction for<br>distressed & fractional sale |
|---|---|---|---|
| Swan Property | $5,840,000.00 | $5,876,907.38 | -0- [1] |
| Tanque Verde Property | $1,900,000.00 | $1,414,000.00 | $486,000.00 [2] |
| 60 N. Alvernon, LLC (75%) | $ 675,000.00 | | $540,000.00 [3] |
| Wilmot & Kolb, LLC (33%) | $ 250,000.00 | | $200,000.00 |
| FM Golf Holdings (18%) | -0- | | -0- |

---

[1]Assuming tenants timely pay rent, the Swan Property will have a net cash flow for payment of unsecured creditors. See Exhibit "8".

[2]This will be used to pay real property taxes due on the Swan and Tanque Verde Properties, as well as Administrative Claims.

[3]The Trustee is not aware of a market for the 60 N. Alvernon, LLC interest or the Wilmot & Kolb, LLC interest.

# EXHIBIT "7"

## McMahon Properties, LLC - Alliance Debt Amortization

Compound Period ......... :  Monthly

Nominal Annual Rate .... :  5.250 %

### CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 12/31/2015 | 5,600,000.00 | 1 | | |
| 2 | Payment | 01/01/2016 | 33,416.50 | 300 | Monthly | 12/01/2040 |

### AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 12/31/2015 | | | | 5,600,000.00 |
| 2015 Totals | | 0.00 | 0.00 | 0.00 | |
| 1 | 01/01/2016 | 33,416.50 | 805.48 | 32,611.02 | 5,567,388.98 |
| 2 | 02/01/2016 | 33,416.50 | 24,357.33 | 9,059.17 | 5,558,329.81 |
| 3 | 03/01/2016 | 33,416.50 | 24,317.69 | 9,098.81 | 5,549,231.00 |
| 4 | 04/01/2016 | 33,416.50 | 24,277.89 | 9,138.61 | 5,540,092.39 |
| 5 | 05/01/2016 | 33,416.50 | 24,237.90 | 9,178.60 | 5,530,913.79 |
| 6 | 06/01/2018 | 33,416.50 | 24,197.75 | 9,218.75 | 5,521,695.04 |
| 7 | 07/01/2016 | 33,416.50 | 24,157.42 | 9,259.08 | 5,512,435.96 |
| 8 | 08/01/2016 | 33,416.50 | 24,116.91 | 9,299.59 | 5,503,136.37 |
| 9 | 09/01/2016 | 33,416.50 | 24,076.22 | 9,340.28 | 5,493,796.09 |
| 10 | 10/01/2016 | 33,416.50 | 24,035.36 | 9,381.14 | 5,484,414.95 |
| 11 | 11/01/2016 | 33,416.50 | 23,994.32 | 9,422.18 | 5,474,992.77 |
| 12 | 12/01/2016 | 33,416.50 | 23,953.09 | 9,463.41 | 5,465,529.36 |
| 2016 Totals | | 400,998.00 | 266,527.36 | 134,470.64 | |
| 13 | 01/01/2017 | 33,416.50 | 23,911.69 | 9,504.81 | 5,456,024.55 |
| 14 | 02/01/2017 | 33,416.50 | 23,870.11 | 9,546.39 | 5,446,478.16 |
| 15 | 03/01/2017 | 33,416.50 | 23,828.34 | 9,588.16 | 5,436,890.00 |
| 16 | 04/01/2017 | 33,416.50 | 23,786.39 | 9,630.11 | 5,427,259.89 |
| 17 | 05/01/2017 | 33,416.50 | 23,744.26 | 9,672.24 | 5,417,587.65 |
| 18 | 06/01/2017 | 33,416.50 | 23,701.95 | 9,714.55 | 5,407,873.10 |
| 19 | 07/01/2017 | 33,416.50 | 23,659.44 | 9,757.06 | 5,398,116.04 |
| 20 | 08/01/2017 | 33,416.50 | 23,616.76 | 9,799.74 | 5,388,316.30 |
| 21 | 09/01/2017 | 33,416.50 | 23,573.88 | 9,842.62 | 5,378,473.68 |
| 22 | 10/01/2017 | 33,416.50 | 23,530.82 | 9,885.68 | 5,368,588.00 |
| 23 | 11/01/2017 | 33,416.50 | 23,487.57 | 9,928.93 | 5,358,659.07 |
| 24 | 12/01/2017 | 33,416.50 | 23,444.13 | 9,972.37 | 5,348,686.70 |
| 2017 Totals | | 400,998.00 | 284,155.34 | 116,842.66 | |
| 25 | 01/01/2018 | 33,416.50 | 23,400.50 | 10,016.00 | 5,338,670.70 |
| 26 | 02/01/2018 | 33,416.50 | 23,356.68 | 10,059.82 | 5,328,610.88 |
| 27 | 03/01/2018 | 33,416.50 | 23,312.67 | 10,103.83 | 5,318,507.05 |
| 28 | 04/01/2018 | 33,416.50 | 23,268.47 | 10,148.03 | 5,308,359.02 |
| 29 | 05/01/2018 | 33,416.50 | 23,224.07 | 10,192.43 | 5,298,166.59 |

## McMahon Properties, LLC - Alliance Debt Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 30 | 06/01/2018 | 33,416.50 | 23,179.48 | 10,237.02 | 5,287,929.57 |
| 31 | 07/01/2018 | 33,416.50 | 23,134.69 | 10,281.81 | 5,277,647.76 |
| 32 | 08/01/2018 | 33,416.50 | 23,089.71 | 10,326.79 | 5,267,320.97 |
| 33 | 09/01/2018 | 33,416.50 | 23,044.53 | 10,371.97 | 5,256,949.00 |
| 34 | 10/01/2018 | 33,416.50 | 22,999.15 | 10,417.35 | 5,246,531.65 |
| 35 | 11/01/2018 | 33,416.50 | 22,953.58 | 10,462.92 | 5,236,068.73 |
| 36 | 12/01/2018 | 33,416.50 | 22,907.80 | 10,508.70 | 5,225,560.03 |
| 2018 Totals | | 400,998.00 | 277,871.33 | 123,126.67 | |
| 37 | 01/01/2019 | 33,416.50 | 22,861.83 | 10,554.67 | 5,215,005.36 |
| 38 | 02/01/2019 | 33,416.50 | 22,815.65 | 10,600.85 | 5,204,404.51 |
| 39 | 03/01/2019 | 33,416.50 | 22,769.27 | 10,647.23 | 5,193,757.28 |
| 40 | 04/01/2019 | 33,416.50 | 22,722.69 | 10,693.81 | 5,183,063.47 |
| 41 | 05/01/2019 | 33,416.50 | 22,675.90 | 10,740.60 | 5,172,322.87 |
| 42 | 06/01/2019 | 33,416.50 | 22,628.91 | 10,787.59 | 5,161,535.28 |
| 43 | 07/01/2019 | 33,416.50 | 22,581.72 | 10,834.78 | 5,150,700.50 |
| 44 | 08/01/2019 | 33,416.50 | 22,534.31 | 10,882.19 | 5,139,818.31 |
| 45 | 09/01/2019 | 33,416.50 | 22,486.71 | 10,929.79 | 5,128,888.52 |
| 46 | 10/01/2019 | 33,416.50 | 22,438.89 | 10,977.61 | 5,117,910.91 |
| 47 | 11/01/2019 | 33,416.50 | 22,390.86 | 11,025.64 | 5,106,885.27 |
| 48 | 12/01/2019 | 33,416.50 | 22,342.62 | 11,073.88 | 5,095,811.39 |
| 2019 Totals | | 400,998.00 | 271,249.36 | 129,748.64 | |
| 49 | 01/01/2020 | 33,416.50 | 22,294.17 | 11,122.33 | 5,084,689.06 |
| 50 | 02/01/2020 | 33,416.50 | 22,245.51 | 11,170.99 | 5,073,518.07 |
| 51 | 03/01/2020 | 33,416.50 | 22,196.64 | 11,219.86 | 5,062,298.21 |
| 52 | 04/01/2020 | 33,416.50 | 22,147.55 | 11,268.95 | 5,051,029.26 |
| 53 | 05/01/2020 | 33,416.50 | 22,098.25 | 11,318.25 | 5,039,711.01 |
| 54 | 06/01/2020 | 33,416.50 | 22,048.74 | 11,367.76 | 5,028,343.25 |
| 55 | 07/01/2020 | 33,416.50 | 21,999.00 | 11,417.50 | 5,016,925.75 |
| 56 | 08/01/2020 | 33,416.50 | 21,949.05 | 11,467.45 | 5,005,458.30 |
| 57 | 09/01/2020 | 33,416.50 | 21,898.88 | 11,517.62 | 4,993,940.68 |
| 58 | 10/01/2020 | 33,416.50 | 21,848.49 | 11,568.01 | 4,982,372.67 |
| 59 | 11/01/2020 | 33,416.50 | 21,797.88 | 11,618.62 | 4,970,754.05 |
| 60 | 12/01/2020 | 33,416.50 | 21,747.05 | 11,669.45 | 4,959,084.60 |
| 2020 Totals | | 400,998.00 | 264,271.21 | 136,726.79 | |
| 61 | 01/01/2021 | 33,416.50 | 21,696.00 | 11,720.50 | 4,947,364.10 |
| 62 | 02/01/2021 | 33,416.50 | 21,644.72 | 11,771.78 | 4,935,592.32 |
| 63 | 03/01/2021 | 33,416.50 | 21,593.22 | 11,823.28 | 4,923,769.04 |
| 64 | 04/01/2021 | 33,416.50 | 21,541.49 | 11,875.01 | 4,911,894.03 |
| 65 | 05/01/2021 | 33,416.50 | 21,489.54 | 11,926.96 | 4,899,967.07 |
| 66 | 06/01/2021 | 33,416.50 | 21,437.36 | 11,979.14 | 4,887,987.93 |
| 67 | 07/01/2021 | 33,416.50 | 21,384.95 | 12,031.55 | 4,875,956.38 |
| 68 | 08/01/2021 | 33,416.50 | 21,332.31 | 12,084.19 | 4,863,872.19 |
| 69 | 09/01/2021 | 33,416.50 | 21,279.44 | 12,137.06 | 4,851,735.13 |
| 70 | 10/01/2021 | 33,416.50 | 21,226.34 | 12,190.16 | 4,839,544.97 |
| 71 | 11/01/2021 | 33,416.50 | 21,173.01 | 12,243.49 | 4,827,301.48 |
| 72 | 12/01/2021 | 33,416.50 | 21,119.44 | 12,297.06 | 4,815,004.42 |

McMahon Properties, LLC - Alliance Debt Amortization

| Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| 2021 Totals | 400,998.00 | 256,917.82 | 144,080.18 | |
| 73 01/01/2022 | 33,416.50 | 21,065.64 | 12,350.86 | 4,802,653.56 |
| 74 02/01/2022 | 33,416.50 | 21,011.61 | 12,404.89 | 4,790,248.67 |
| 75 03/01/2022 | 33,416.50 | 20,957.34 | 12,459.16 | 4,777,789.51 |
| 76 04/01/2022 | 33,416.50 | 20,902.83 | 12,513.67 | 4,765,275.84 |
| 77 05/01/2022 | 33,416.50 | 20,848.08 | 12,568.42 | 4,752,707.42 |
| 78 06/01/2022 | 33,416.50 | 20,793.09 | 12,623.41 | 4,740,084.01 |
| 79 07/01/2022 | 33,416.50 | 20,737.87 | 12,678.63 | 4,727,405.38 |
| 80 08/01/2022 | 33,416.50 | 20,682.40 | 12,734.10 | 4,714,671.28 |
| 81 09/01/2022 | 33,416.50 | 20,626.69 | 12,789.81 | 4,701,881.47 |
| 82 10/01/2022 | 33,416.50 | 20,570.73 | 12,845.77 | 4,689,035.70 |
| 83 11/01/2022 | 33,416.50 | 20,514.53 | 12,901.97 | 4,676,133.73 |
| 84 12/01/2022 | 33,416.50 | 20,458.09 | 12,958.41 | 4,663,175.32 |
| 2022 Totals | 400,998.00 | 249,168.90 | 151,829.10 | |
| 85 01/01/2023 | 33,416.50 | 20,401.39 | 13,015.11 | 4,650,160.21 |
| 86 02/01/2023 | 33,416.50 | 20,344.45 | 13,072.05 | 4,637,088.16 |
| 87 03/01/2023 | 33,416.50 | 20,287.26 | 13,129.24 | 4,623,958.92 |
| 88 04/01/2023 | 33,416.50 | 20,229.82 | 13,186.68 | 4,610,772.24 |
| 89 05/01/2023 | 33,416.50 | 20,172.13 | 13,244.37 | 4,597,527.87 |
| 90 06/01/2023 | 33,416.50 | 20,114.18 | 13,302.32 | 4,584,225.55 |
| 91 07/01/2023 | 33,416.50 | 20,055.99 | 13,360.51 | 4,570,865.04 |
| 92 08/01/2023 | 33,416.50 | 19,997.53 | 13,418.97 | 4,557,446.07 |
| 93 09/01/2023 | 33,416.50 | 19,938.83 | 13,477.67 | 4,543,968.40 |
| 94 10/01/2023 | 33,416.50 | 19,879.86 | 13,536.64 | 4,530,431.76 |
| 95 11/01/2023 | 33,416.50 | 19,820.64 | 13,595.86 | 4,516,835.90 |
| 96 12/01/2023 | 33,416.50 | 19,761.16 | 13,655.34 | 4,503,180.56 |
| 2023 Totals | 400,998.00 | 241,003.24 | 159,994.76 | |
| 97 01/01/2024 | 33,416.50 | 19,701.41 | 13,715.09 | 4,489,465.47 |
| 98 02/01/2024 | 33,416.50 | 19,641.41 | 13,775.09 | 4,475,690.38 |
| 99 03/01/2024 | 33,416.50 | 19,581.15 | 13,835.35 | 4,461,855.03 |
| 100 04/01/2024 | 33,416.50 | 19,520.62 | 13,895.88 | 4,447,959.15 |
| 101 05/01/2024 | 33,416.50 | 19,459.82 | 13,956.68 | 4,434,002.47 |
| 102 06/01/2024 | 33,416.50 | 19,398.76 | 14,017.74 | 4,419,984.73 |
| 103 07/01/2024 | 33,416.50 | 19,337.43 | 14,079.07 | 4,405,905.66 |
| 104 08/01/2024 | 33,416.50 | 19,275.84 | 14,140.66 | 4,391,765.00 |
| 105 09/01/2024 | 33,416.50 | 19,213.97 | 14,202.53 | 4,377,562.47 |
| 106 10/01/2024 | 33,416.50 | 19,151.84 | 14,264.66 | 4,363,297.81 |
| 107 11/01/2024 | 33,416.50 | 19,089.43 | 14,327.07 | 4,348,970.74 |
| 108 12/01/2024 | 33,416.50 | 19,026.75 | 14,389.75 | 4,334,580.99 |
| 2024 Totals | 400,998.00 | 232,398.43 | 168,599.57 | |
| 109 01/01/2025 | 33,416.50 | 18,963.79 | 14,452.71 | 4,320,128.28 |
| 110 02/01/2025 | 33,416.50 | 18,900.56 | 14,515.94 | 4,305,612.34 |
| 111 03/01/2025 | 33,416.50 | 18,837.05 | 14,579.45 | 4,291,032.89 |
| 112 04/01/2025 | 33,416.50 | 18,773.27 | 14,643.23 | 4,276,389.66 |
| 113 05/01/2025 | 33,416.50 | 18,709.20 | 14,707.30 | 4,261,682.36 |

McMahon Properties, LLC - Alliance Debt Amortization

|      | Date       | Payment    | Interest   | Principal  | Balance      |
|------|------------|------------|------------|------------|--------------|
| 114  | 06/01/2025 | 33,416.50  | 18,644.86  | 14,771.64  | 4,246,910.72 |
| 115  | 07/01/2025 | 33,416.50  | 18,580.23  | 14,836.27  | 4,232,074.45 |
| 116  | 08/01/2025 | 33,416.50  | 18,515.33  | 14,901.17  | 4,217,173.28 |
| 117  | 09/01/2025 | 33,416.50  | 18,450.13  | 14,966.37  | 4,202,206.91 |
| 118  | 10/01/2025 | 33,416.50  | 18,384.66  | 15,031.84  | 4,187,175.07 |
| 119  | 11/01/2025 | 33,416.50  | 18,318.89  | 15,097.61  | 4,172,077.46 |
| 120  | 12/01/2025 | 33,416.50  | 18,252.84  | 15,163.66  | 4,156,913.80 |
| 2025 Totals | | 400,998.00 | 223,330.81 | 177,667.19 |            |
|      |            |            |            |            |              |
| 121  | 01/01/2026 | 33,416.50  | 18,186.50  | 15,230.00  | 4,141,683.80 |
| 122  | 02/01/2026 | 33,416.50  | 18,119.87  | 15,296.63  | 4,126,387.17 |
| 123  | 03/01/2026 | 33,416.50  | 18,052.94  | 15,363.56  | 4,111,023.61 |
| 124  | 04/01/2026 | 33,416.50  | 17,985.73  | 15,430.77  | 4,095,592.84 |
| 125  | 05/01/2026 | 33,416.50  | 17,918.22  | 15,498.28  | 4,080,094.56 |
| 126  | 06/01/2026 | 33,416.50  | 17,850.41  | 15,566.09  | 4,064,528.47 |
| 127  | 07/01/2026 | 33,416.50  | 17,782.31  | 15,634.19  | 4,048,894.28 |
| 128  | 08/01/2026 | 33,416.50  | 17,713.91  | 15,702.59  | 4,033,191.69 |
| 129  | 09/01/2026 | 33,416.50  | 17,645.21  | 15,771.29  | 4,017,420.40 |
| 130  | 10/01/2026 | 33,416.50  | 17,576.21  | 15,840.29  | 4,001,580.11 |
| 131  | 11/01/2026 | 33,416.50  | 17,506.91  | 15,909.59  | 3,985,670.52 |
| 132  | 12/01/2026 | 33,416.50  | 17,437.31  | 15,979.19  | 3,969,691.33 |
| 2026 Totals | | 400,998.00 | 213,775.53 | 187,222.47 |            |
|      |            |            |            |            |              |
| 133  | 01/01/2027 | 33,416.50  | 17,367.40  | 16,049.10  | 3,953,642.23 |
| 134  | 02/01/2027 | 33,416.50  | 17,297.18  | 16,119.32  | 3,937,522.91 |
| 135  | 03/01/2027 | 33,416.50  | 17,226.66  | 16,189.84  | 3,921,333.07 |
| 136  | 04/01/2027 | 33,416.50  | 17,155.83  | 16,260.67  | 3,905,072.40 |
| 137  | 05/01/2027 | 33,416.50  | 17,084.69  | 16,331.81  | 3,888,740.59 |
| 138  | 06/01/2027 | 33,416.50  | 17,013.24  | 16,403.26  | 3,872,337.33 |
| 139  | 07/01/2027 | 33,416.50  | 16,941.48  | 16,475.02  | 3,855,862.31 |
| 140  | 08/01/2027 | 33,416.50  | 16,869.40  | 16,547.10  | 3,839,315.21 |
| 141  | 09/01/2027 | 33,416.50  | 16,797.00  | 16,619.50  | 3,822,695.71 |
| 142  | 10/01/2027 | 33,416.50  | 16,724.29  | 16,692.21  | 3,806,003.50 |
| 143  | 11/01/2027 | 33,416.50  | 16,651.27  | 16,765.23  | 3,789,238.27 |
| 144  | 12/01/2027 | 33,416.50  | 16,577.92  | 16,838.58  | 3,772,399.69 |
| 2027 Totals | | 400,998.00 | 203,706.36 | 197,291.64 |            |
|      |            |            |            |            |              |
| 145  | 01/01/2028 | 33,416.50  | 16,504.25  | 16,912.25  | 3,755,487.44 |
| 146  | 02/01/2028 | 33,416.50  | 16,430.26  | 16,986.24  | 3,738,501.20 |
| 147  | 03/01/2028 | 33,416.50  | 16,355.94  | 17,060.56  | 3,721,440.64 |
| 148  | 04/01/2028 | 33,416.50  | 16,281.30  | 17,135.20  | 3,704,305.44 |
| 149  | 05/01/2028 | 33,416.50  | 16,206.34  | 17,210.16  | 3,687,095.28 |
| 150  | 06/01/2028 | 33,416.50  | 16,131.04  | 17,285.46  | 3,669,809.82 |
| 151  | 07/01/2028 | 33,416.50  | 16,055.42  | 17,361.08  | 3,652,448.74 |
| 152  | 08/01/2028 | 33,416.50  | 15,979.46  | 17,437.04  | 3,635,011.70 |
| 153  | 09/01/2028 | 33,416.50  | 15,903.18  | 17,513.32  | 3,617,498.38 |
| 154  | 10/01/2028 | 33,416.50  | 15,826.56  | 17,589.94  | 3,599,908.44 |
| 155  | 11/01/2028 | 33,416.50  | 15,749.60  | 17,666.90  | 3,582,241.54 |
| 156  | 12/01/2028 | 33,416.50  | 15,672.31  | 17,744.19  | 3,564,497.35 |

McMahon Properties, LLC - Alliance Debt Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 2028 Totals | | 400,998.00 | 193,095.66 | 207,902.34 | |
| 157 | 01/01/2029 | 33,416.50 | 15,594.68 | 17,821.82 | 3,546,675.53 |
| 158 | 02/01/2029 | 33,416.50 | 15,516.71 | 17,899.79 | 3,528,775.74 |
| 159 | 03/01/2029 | 33,416.50 | 15,438.39 | 17,978.11 | 3,510,797.63 |
| 160 | 04/01/2029 | 33,416.50 | 15,359.74 | 18,056.76 | 3,492,740.87 |
| 161 | 05/01/2029 | 33,416.50 | 15,280.74 | 18,135.76 | 3,474,605.11 |
| 162 | 06/01/2029 | 33,416.50 | 15,201.40 | 18,215.10 | 3,456,390.01 |
| 163 | 07/01/2029 | 33,416.50 | 15,121.71 | 18,294.79 | 3,438,095.22 |
| 164 | 08/01/2029 | 33,416.50 | 15,041.67 | 18,374.83 | 3,419,720.39 |
| 165 | 09/01/2029 | 33,416.50 | 14,961.28 | 18,455.22 | 3,401,265.17 |
| 166 | 10/01/2029 | 33,416.50 | 14,880.54 | 18,535.96 | 3,382,729.21 |
| 167 | 11/01/2029 | 33,416.50 | 14,799.44 | 18,617.06 | 3,364,112.15 |
| 168 | 12/01/2029 | 33,416.50 | 14,717.99 | 18,698.51 | 3,345,413.64 |
| 2029 Totals | | 400,998.00 | 181,914.29 | 219,083.71 | |
| 169 | 01/01/2030 | 33,416.50 | 14,636.18 | 18,780.32 | 3,326,633.32 |
| 170 | 02/01/2030 | 33,416.50 | 14,554.02 | 18,862.48 | 3,307,770.84 |
| 171 | 03/01/2030 | 33,416.50 | 14,471.50 | 18,945.00 | 3,288,825.84 |
| 172 | 04/01/2030 | 33,416.50 | 14,388.61 | 19,027.89 | 3,269,797.95 |
| 173 | 05/01/2030 | 33,416.50 | 14,305.37 | 19,111.13 | 3,250,686.82 |
| 174 | 06/01/2030 | 33,416.50 | 14,221.75 | 19,194.75 | 3,231,492.07 |
| 175 | 07/01/2030 | 33,416.50 | 14,137.78 | 19,278.72 | 3,212,213.35 |
| 176 | 08/01/2030 | 33,416.50 | 14,053.43 | 19,363.07 | 3,192,850.28 |
| 177 | 09/01/2030 | 33,416.50 | 13,968.72 | 19,447.78 | 3,173,402.50 |
| 178 | 10/01/2030 | 33,416.50 | 13,883.64 | 19,532.86 | 3,153,869.64 |
| 179 | 11/01/2030 | 33,416.50 | 13,798.18 | 19,618.32 | 3,134,251.32 |
| 180 | 12/01/2030 | 33,416.50 | 13,712.35 | 19,704.15 | 3,114,547.17 |
| 2030 Totals | | 400,998.00 | 170,131.53 | 230,866.47 | |
| 181 | 01/01/2031 | 33,416.50 | 13,626.14 | 19,790.36 | 3,094,756.81 |
| 182 | 02/01/2031 | 33,416.50 | 13,539.56 | 19,876.94 | 3,074,879.87 |
| 183 | 03/01/2031 | 33,416.50 | 13,452.60 | 19,963.90 | 3,054,915.97 |
| 184 | 04/01/2031 | 33,416.50 | 13,365.26 | 20,051.24 | 3,034,864.73 |
| 185 | 05/01/2031 | 33,416.50 | 13,277.53 | 20,138.97 | 3,014,725.76 |
| 186 | 06/01/2031 | 33,416.50 | 13,189.43 | 20,227.07 | 2,994,498.69 |
| 187 | 07/01/2031 | 33,416.50 | 13,100.93 | 20,315.57 | 2,974,183.12 |
| 188 | 08/01/2031 | 33,416.50 | 13,012.05 | 20,404.45 | 2,953,778.67 |
| 189 | 09/01/2031 | 33,416.50 | 12,922.78 | 20,493.72 | 2,933,284.95 |
| 190 | 10/01/2031 | 33,416.50 | 12,833.12 | 20,583.38 | 2,912,701.57 |
| 191 | 11/01/2031 | 33,416.50 | 12,743.07 | 20,673.43 | 2,892,028.14 |
| 192 | 12/01/2031 | 33,416.50 | 12,652.62 | 20,763.88 | 2,871,264.26 |
| 2031 Totals | | 400,998.00 | 157,715.09 | 243,282.91 | |
| 193 | 01/01/2032 | 33,416.50 | 12,561.78 | 20,854.72 | 2,850,409.54 |
| 194 | 02/01/2032 | 33,416.50 | 12,470.54 | 20,945.96 | 2,829,463.58 |
| 195 | 03/01/2032 | 33,416.50 | 12,378.90 | 21,037.60 | 2,808,425.98 |
| 196 | 04/01/2032 | 33,416.50 | 12,286.86 | 21,129.64 | 2,787,296.34 |
| 197 | 05/01/2032 | 33,416.50 | 12,194.42 | 21,222.08 | 2,766,074.26 |

McMahon Properties, LLC - Alliance Debt Amortization

|  | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 198 | 06/01/2032 | 33,416.50 | 12,101.57 | 21,314.93 | 2,744,759.33 |
| 199 | 07/01/2032 | 33,416.50 | 12,008.32 | 21,408.18 | 2,723,351.15 |
| 200 | 08/01/2032 | 33,416.50 | 11,914.66 | 21,501.84 | 2,701,849.31 |
| 201 | 09/01/2032 | 33,416.50 | 11,820.59 | 21,595.91 | 2,680,253.40 |
| 202 | 10/01/2032 | 33,416.50 | 11,726.11 | 21,690.39 | 2,658,563.01 |
| 203 | 11/01/2032 | 33,416.50 | 11,631.21 | 21,785.29 | 2,636,777.72 |
| 204 | 12/01/2032 | 33,416.50 | 11,535.90 | 21,880.60 | 2,614,897.12 |
| 2032 Totals |  | 400,998.00 | 144,630.86 | 256,367.14 |  |
| 205 | 01/01/2033 | 33,416.50 | 11,440.17 | 21,976.33 | 2,592,920.79 |
| 206 | 02/01/2033 | 33,416.50 | 11,344.03 | 22,072.47 | 2,570,848.32 |
| 207 | 03/01/2033 | 33,416.50 | 11,247.46 | 22,169.04 | 2,548,679.28 |
| 208 | 04/01/2033 | 33,416.50 | 11,150.47 | 22,266.03 | 2,526,413.25 |
| 209 | 05/01/2033 | 33,416.50 | 11,053.06 | 22,363.44 | 2,504,049.81 |
| 210 | 06/01/2033 | 33,416.50 | 10,955.22 | 22,461.28 | 2,481,588.53 |
| 211 | 07/01/2033 | 33,416.50 | 10,856.95 | 22,559.55 | 2,459,028.98 |
| 212 | 08/01/2033 | 33,416.50 | 10,758.25 | 22,658.25 | 2,436,370.73 |
| 213 | 09/01/2033 | 33,416.50 | 10,659.12 | 22,757.38 | 2,413,613.35 |
| 214 | 10/01/2033 | 33,416.50 | 10,559.56 | 22,856.94 | 2,390,756.41 |
| 215 | 11/01/2033 | 33,416.50 | 10,459.56 | 22,956.94 | 2,367,799.47 |
| 216 | 12/01/2033 | 33,416.50 | 10,359.12 | 23,057.38 | 2,344,742.09 |
| 2033 Totals |  | 400,998.00 | 130,842.97 | 270,155.03 |  |
| 217 | 01/01/2034 | 33,416.50 | 10,258.25 | 23,158.25 | 2,321,583.84 |
| 218 | 02/01/2034 | 33,416.50 | 10,156.93 | 23,259.57 | 2,298,324.27 |
| 219 | 03/01/2034 | 33,416.50 | 10,055.17 | 23,361.33 | 2,274,962.94 |
| 220 | 04/01/2034 | 33,416.50 | 9,952.96 | 23,463.54 | 2,251,499.40 |
| 221 | 05/01/2034 | 33,416.50 | 9,850.31 | 23,566.19 | 2,227,933.21 |
| 222 | 06/01/2034 | 33,416.50 | 9,747.21 | 23,669.29 | 2,204,263.92 |
| 223 | 07/01/2034 | 33,416.50 | 9,643.65 | 23,772.85 | 2,180,491.07 |
| 224 | 08/01/2034 | 33,416.50 | 9,539.65 | 23,876.85 | 2,156,614.22 |
| 225 | 09/01/2034 | 33,416.50 | 9,435.19 | 23,981.31 | 2,132,632.91 |
| 226 | 10/01/2034 | 33,416.50 | 9,330.27 | 24,086.23 | 2,108,546.68 |
| 227 | 11/01/2034 | 33,416.50 | 9,224.89 | 24,191.61 | 2,084,355.07 |
| 228 | 12/01/2034 | 33,416.50 | 9,119.05 | 24,297.45 | 2,060,057.62 |
| 2034 Totals |  | 400,998.00 | 116,313.53 | 284,684.47 |  |
| 229 | 01/01/2035 | 33,416.50 | 9,012.75 | 24,403.75 | 2,035,653.87 |
| 230 | 02/01/2035 | 33,416.50 | 8,905.99 | 24,510.51 | 2,011,143.36 |
| 231 | 03/01/2035 | 33,416.50 | 8,798.75 | 24,617.75 | 1,986,525.61 |
| 232 | 04/01/2035 | 33,416.50 | 8,691.05 | 24,725.45 | 1,961,800.16 |
| 233 | 05/01/2035 | 33,416.50 | 8,582.88 | 24,833.62 | 1,936,966.54 |
| 234 | 06/01/2035 | 33,416.50 | 8,474.23 | 24,942.27 | 1,912,024.27 |
| 235 | 07/01/2035 | 33,416.50 | 8,365.11 | 25,051.39 | 1,886,972.88 |
| 236 | 08/01/2035 | 33,416.50 | 8,255.51 | 25,160.99 | 1,861,811.89 |
| 237 | 09/01/2035 | 33,416.50 | 8,145.43 | 25,271.07 | 1,836,540.82 |
| 238 | 10/01/2035 | 33,416.50 | 8,034.87 | 25,381.63 | 1,811,159.19 |
| 239 | 11/01/2035 | 33,416.50 | 7,923.82 | 25,492.68 | 1,785,666.51 |
| 240 | 12/01/2035 | 33,416.50 | 7,812.29 | 25,604.21 | 1,760,062.30 |

McMahon Properties, LLC - Alliance Debt Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| **2035 Totals** | | 400,998.00 | 101,002.68 | 299,995.32 | |
| 241 | 01/01/2036 | 33,416.50 | 7,700.27 | 25,716.23 | 1,734,346.07 |
| 242 | 02/01/2036 | 33,416.50 | 7,587.76 | 25,828.74 | 1,708,517.33 |
| 243 | 03/01/2036 | 33,416.50 | 7,474.76 | 25,941.74 | 1,682,575.59 |
| 244 | 04/01/2036 | 33,416.50 | 7,361.27 | 26,055.23 | 1,656,520.36 |
| 245 | 05/01/2036 | 33,416.50 | 7,247.28 | 26,169.22 | 1,630,351.14 |
| 246 | 06/01/2036 | 33,416.50 | 7,132.79 | 26,283.71 | 1,604,067.43 |
| 247 | 07/01/2036 | 33,416.50 | 7,017.80 | 26,398.70 | 1,577,668.73 |
| 248 | 08/01/2036 | 33,416.50 | 6,902.30 | 26,514.20 | 1,551,154.53 |
| 249 | 09/01/2036 | 33,416.50 | 6,786.30 | 26,630.20 | 1,524,524.33 |
| 250 | 10/01/2036 | 33,416.50 | 6,669.79 | 26,746.71 | 1,497,777.62 |
| 251 | 11/01/2036 | 33,416.50 | 6,552.78 | 26,863.72 | 1,470,913.90 |
| 252 | 12/01/2036 | 33,416.50 | 6,435.25 | 26,981.25 | 1,443,932.65 |
| **2036 Totals** | | 400,998.00 | 84,868.35 | 316,129.65 | |
| 253 | 01/01/2037 | 33,416.50 | 6,317.21 | 27,099.29 | 1,416,833.36 |
| 254 | 02/01/2037 | 33,416.50 | 6,198.65 | 27,217.85 | 1,389,615.51 |
| 255 | 03/01/2037 | 33,416.50 | 6,079.57 | 27,336.93 | 1,362,278.58 |
| 256 | 04/01/2037 | 33,416.50 | 5,959.97 | 27,456.53 | 1,334,822.05 |
| 257 | 05/01/2037 | 33,416.50 | 5,839.85 | 27,576.65 | 1,307,245.40 |
| 258 | 06/01/2037 | 33,416.50 | 5,719.20 | 27,697.30 | 1,279,548.10 |
| 259 | 07/01/2037 | 33,416.50 | 5,598.02 | 27,818.48 | 1,251,729.62 |
| 260 | 08/01/2037 | 33,416.50 | 5,476.32 | 27,940.18 | 1,223,789.44 |
| 261 | 09/01/2037 | 33,416.50 | 5,354.08 | 28,062.42 | 1,195,727.02 |
| 262 | 10/01/2037 | 33,416.50 | 5,231.31 | 28,185.19 | 1,167,541.83 |
| 263 | 11/01/2037 | 33,416.50 | 5,108.00 | 28,308.50 | 1,139,233.33 |
| 264 | 12/01/2037 | 33,416.50 | 4,984.15 | 28,432.35 | 1,110,800.98 |
| **2037 Totals** | | 400,998.00 | 67,866.33 | 333,131.67 | |
| 265 | 01/01/2038 | 33,416.50 | 4,859.75 | 28,556.75 | 1,082,244.23 |
| 266 | 02/01/2038 | 33,416.50 | 4,734.82 | 28,681.68 | 1,053,562.55 |
| 267 | 03/01/2038 | 33,416.50 | 4,609.34 | 28,807.16 | 1,024,755.39 |
| 268 | 04/01/2038 | 33,416.50 | 4,483.30 | 28,933.20 | 995,822.19 |
| 269 | 05/01/2038 | 33,416.50 | 4,356.72 | 29,059.78 | 966,762.41 |
| 270 | 06/01/2038 | 33,416.50 | 4,229.59 | 29,186.91 | 937,575.50 |
| 271 | 07/01/2038 | 33,416.50 | 4,101.89 | 29,314.61 | 908,260.89 |
| 272 | 08/01/2038 | 33,416.50 | 3,973.64 | 29,442.86 | 878,818.03 |
| 273 | 09/01/2038 | 33,416.50 | 3,844.83 | 29,571.67 | 849,246.36 |
| 274 | 10/01/2038 | 33,416.50 | 3,715.45 | 29,701.05 | 819,545.31 |
| 275 | 11/01/2038 | 33,416.50 | 3,585.51 | 29,830.99 | 789,714.32 |
| 276 | 12/01/2038 | 33,416.50 | 3,455.00 | 29,961.50 | 759,752.82 |
| **2038 Totals** | | 400,998.00 | 49,949.84 | 351,048.16 | |
| 277 | 01/01/2039 | 33,416.50 | 3,323.92 | 30,092.58 | 729,660.24 |
| 278 | 02/01/2039 | 33,416.50 | 3,192.26 | 30,224.24 | 699,436.00 |
| 279 | 03/01/2039 | 33,416.50 | 3,060.03 | 30,356.47 | 669,079.53 |
| 280 | 04/01/2039 | 33,416.50 | 2,927.22 | 30,489.28 | 638,590.25 |
| 281 | 05/01/2039 | 33,416.50 | 2,793.83 | 30,622.67 | 607,967.58 |

McMahon Properties, LLC - Alliance Debt Amortization

|  | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 282 | 06/01/2039 | 33,416.50 | 2,659.86 | 30,756.64 | 577,210.94 |
| 283 | 07/01/2039 | 33,416.50 | 2,525.30 | 30,891.20 | 546,319.74 |
| 284 | 08/01/2039 | 33,416.50 | 2,390.15 | 31,026.35 | 515,293.39 |
| 285 | 09/01/2039 | 33,416.50 | 2,254.41 | 31,162.09 | 484,131.30 |
| 286 | 10/01/2039 | 33,416.50 | 2,118.07 | 31,298.43 | 452,832.87 |
| 287 | 11/01/2039 | 33,416.50 | 1,981.14 | 31,435.36 | 421,397.51 |
| 288 | 12/01/2039 | 33,416.50 | 1,843.61 | 31,572.89 | 389,824.62 |
| 2039 Totals | | 400,998.00 | 31,069.80 | 369,928.20 | |
| 289 | 01/01/2040 | 33,416.50 | 1,705.48 | 31,711.02 | 358,113.60 |
| 290 | 02/01/2040 | 33,416.50 | 1,566.75 | 31,849.75 | 326,263.85 |
| 291 | 03/01/2040 | 33,416.50 | 1,427.40 | 31,989.10 | 294,274.75 |
| 292 | 04/01/2040 | 33,416.50 | 1,287.45 | 32,129.05 | 262,145.70 |
| 293 | 05/01/2040 | 33,416.50 | 1,146.89 | 32,269.61 | 229,876.09 |
| 294 | 06/01/2040 | 33,416.50 | 1,005.71 | 32,410.79 | 197,465.30 |
| 295 | 07/01/2040 | 33,416.50 | 863.91 | 32,552.59 | 164,912.71 |
| 296 | 08/01/2040 | 33,416.50 | 721.49 | 32,695.01 | 132,217.70 |
| 297 | 09/01/2040 | 33,416.50 | 578.45 | 32,838.05 | 99,379.65 |
| 298 | 10/01/2040 | 33,416.50 | 434.79 | 32,981.71 | 66,397.94 |
| 299 | 11/01/2040 | 33,416.50 | 290.49 | 33,126.01 | 33,271.93 |
| 300 | 12/01/2040 | 33,416.50 | 144.57 | 33,271.93 | 0.00 |
| 2040 Totals | | 400,998.00 | 11,173.38 | 389,824.62 | |
| Grand Totals | | 10,024,950.00 | 4,424,950.00 | 5,600,000.00 | |

# EXHIBIT "8"

## McMahon Properties
### January 2015 - December 2020 Cash Flow Projections

| | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|---|---|---|---|---|---|
| **Cash Inflows** | | | | | | | | | |
| Fort Lowell Property | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 52,000 |
| **Total Cash Inflows** | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 52,000 |
| **Cash Outflows** | | | | | | | | | |
| Repairs & Maintenance | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| Electricity | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| Gas | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| Water & Water Service | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 | 320 |
| Trash & Recycle Service | 390 | 390 | 390 | 390 | 390 | 390 | 390 | 390 | 390 |
| Janitorial Services & Supplies | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 |
| Office Supplies | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 |
| Landscaping | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 |
| Property Insurance | 1,064 | 1,064 | 1,064 | 1,064 | 1,064 | 1,064 | 1,064 | 1,064 | 1,064 |
| Property Taxes | 74,106 | - | - | 12,351 | 12,351 | 12,351 | 12,351 | 12,351 | 12,351 |
| Sales Taxes | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 |
| Lease Commissions | 924 | 924 | 924 | 924 | 924 | 924 | 924 | 924 | 924 |
| Property Management Fees | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 1,050 |
| Licenses & Permits | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 |
| Office Supplies | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Telephone & Internet Charges | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Postage & Delivery | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 |
| Professional Fees/Costs | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| **Total Cash Outflows** | 84,730 | 10,624 | 10,624 | 24,975 | 24,975 | 24,975 | 24,975 | 24,975 | 24,275 |
| **Operating Cash Flow** | (24,730) | 49,376 | 49,376 | 35,025 | 35,025 | 35,025 | 35,025 | 35,025 | 27,725 |
| Alliance Bank - Class 3 | 28,544 | 28,544 | 28,544 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 |
| **Net Cash Flow Fort Lowell Property** | (53,274) | 20,832 | 20,832 | 10,525 | 10,525 | 10,525 | 10,525 | 10,525 | 3,225 |
| | | | | | | | | | |
| **Cash Inflows** | | | | | | | | | |
| Tanque Verde Property | - | - | - | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 |
| **Total Cash Inflows** | - | - | - | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 |
| **Cash Outflows** | | | | | | | | | |
| Insurance | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| **Total Cash Outflows** | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| **Operating Cash Flow** | (150) | (150) | (150) | 8,252 | 8,252 | 8,252 | 8,252 | 8,252 | 8,252 |
| National Bank - Class 4 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 |
| **Net Cash Flow Tanque Verde Property** | (8,552) | (8,552) | (8,552) | (150) | (150) | (150) | (150) | (150) | (150) |
| | | | | | | | | | |
| **Other Cash Inflows (Outflows)** | | | | | | | | | |
| 60 N. Alvernon Investment | 3,500 | - | - | - | - | - | - | - | - |
| Cure of Past Due McMahon Restaurant Rent | - | 435,000 | 575,000 | 13,000 | - | - | 13,000 | - | - |
| Tanque Verde Option Funds | - | - | - | - | - | - | - | - | - |
| Cap Ex Reserve | - | - | - | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) |
| **Total Cash Inflows (Outflows)** | 3,500 | 435,000 | 575,000 | 10,000 | (3,000) | (3,000) | 10,000 | (3,000) | (3,000) |
| | | | | | | | | | |
| **Total Operational Cash Flow** | (49,924) | 447,280 | 587,280 | 20,375 | 7,375 | 7,375 | 20,375 | 7,375 | 75 |

## McMahon Properties
### January 2015 - December 2020 Cash Flow Projections

| | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|---|---|---|---|---|---|
| **Plan Payments:** | | | | | | | | | |
| Administrative Claims - Professional | (1,625) | - | (100,000) | - | - | - | - | - | - |
| Administrative Claims - UST Fees | - | - | - | - | - | - | - | - | - |
| National Bank | - | (133,000) | - | (4,875) | - | - | (4,875) | - | - |
| Priority Claims - Class 2 | - | - | - | (550) | - | - | - | - | - |
| Real Property Taxes | - | - | (270,000) | - | - | - | - | - | - |
| Unsecured Claims - Class 5 | - | - | - | (6,982) | - | - | (6,982) | - | - |
| Total Plan Payments | (1,625) | (133,000) | (370,000) | (12,407) | - | - | (11,857) | - | - |
| | | | | | | | | | |
| Cash Balance at Beginning of Month | 52,000 | 451 | 314,732 | 132,012 | 139,981 | 147,356 | 154,732 | 163,250 | 170,625 |
| Cash Balance at End of Month | 451 | 314,732 | 132,012 | 139,981 | 147,356 | 154,732 | 163,250 | 170,625 | 170,701 |

## McMahon Properties
### January 2015 - December 2020 Cash Flow Projections

| | Jan-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Year One |
|---|---|---|---|---|---|---|---|
| **Cash Inflows** | | | | | | | |
| Fort Lowell Property | 52,000 | 52,000 | 52,000 | 60,000 | 60,000 | 60,000 | 688,000 |
| Total Cash Inflows | 52,000 | 52,000 | 52,000 | 60,000 | 60,000 | 60,000 | 688,000 |
| **Cash Outflows** | | | | | | | |
| Repairs & Maintenance | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 31,200 |
| Electricity | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Gas | 350 | 350 | 350 | 350 | 350 | 350 | 4,320 |
| Water & Waste Service | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Trash & Recycle Service | 320 | 320 | 320 | 320 | 320 | 320 | 3,840 |
| Janitorial Services & Supplies | 390 | 390 | 390 | 390 | 390 | 390 | 4,680 |
| Landscaping Maint & Supplies | 980 | 980 | 980 | 980 | 980 | 980 | 11,760 |
| Property Insurance | 650 | 650 | 650 | 650 | 650 | 650 | 7,800 |
| Property Taxes | 1,084 | 1,084 | 1,084 | 1,084 | 1,084 | 1,084 | 13,003 |
| Sales Taxes | 12,351 | 12,351 | 12,351 | 12,351 | 12,351 | 12,351 | 148,212 |
| Lease Commissions | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 18,114 |
| Property Management Fee | 924 | 924 | 924 | 924 | 924 | 924 | 11,080 |
| Licenses & Permits | 750 | 750 | 900 | 750 | 750 | 750 | 9,450 |
| Office Supplies | 26 | 26 | 26 | 26 | 26 | 26 | 315 |
| Telephone & Internet Charges | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Postage & Delivery | 380 | 380 | 380 | 380 | 380 | 380 | 4,560 |
| Professional Fees/Costs | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 17,000 |
| Total Cash Outflows | 23,975 | 23,975 | 24,125 | 23,975 | 23,975 | 23,975 | 293,145 |
| **Operating Cash Flow** | 28,025 | 28,025 | 27,875 | 36,025 | 36,025 | 36,025 | 394,855 |
| Alliance Bank - Class 3 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 294,000 |
| **Net Cash Flow Fort Lowell Property** | 3,525 | 3,525 | 3,375 | 11,525 | 11,525 | 11,525 | 100,855 |
| **Cash Inflows** | | | | | | | |
| Tanque Verde Property | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 100,824 |
| Total Cash Inflows | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 100,824 |
| **Cash Outflows** | | | | | | | |
| Insurance | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Total Cash Outflows | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| **Operating Cash Flow** | 8,252 | 8,252 | 8,252 | 8,252 | 8,252 | 8,252 | 99,024 |
| National Bank - Class 4 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 8,402 | 100,824 |
| **Net Cash Flow Tanque Verde Property** | (150) | (150) | (150) | (150) | (150) | (150) | (1,800) |
| **Other Cash Inflows (Outflows)** | | | | | | | |
| 60 N. Alvernon Investment | 13,000 | | | | 13,000 | | 52,000 |
| Cure of Past Due McMahon Restaurant | - | - | - | - | - | - | |
| Tanque Verde Option Funds | - | - | - | - | - | - | |
| Cap Ex Reserve | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (36,000) |
| Total Cash Inflows (Outflows) | 10,000 | (3,000) | (3,000) | (3,000) | 10,000 | (3,000) | 16,000 |
| **Total Operational Cash Flow** | 13,375 | 375 | 225 | 8,375 | 21,375 | 8,375 | 115,055 |

| | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Year One |
|---|---|---|---|---|---|---|---|
| **Plan Payments:** | | | | | | | |
| Administrative Claims - Professional | - | - | - | - | - | - | (9,750) |
| Administrative Claims - UST Fees | - | - | - | - | - | - | - |
| National Bank | - | - | - | - | - | - | (550) |
| Priority Claims - Class 2 | - | - | - | - | - | - | - |
| Real Property Taxes | - | - | - | - | - | - | - |
| Unsecured Claims - Class 5 | (6,982) | - | - | - | (6,982) | - | (27,928) |
| Total Plan Payments | (6,982) | - | - | - | (6,982) | - | (38,228) |
| | | | | | | | |
| Cash Balance at Beginning of Month | 170,701 | 177,094 | 177,470 | 177,695 | 186,071 | 200,464 | 132,012 |
| | | | | | | | |
| Cash Balance at End of Month | 177,094 | 177,470 | 177,695 | 186,071 | 200,464 | 208,839 | 208,839 |

## McMahon Properties
### January 2015 - December 2020 Cash Flow Projections

| | Year Two | Year Three | Year Four | Year Five | Year Six | Year Seven |
|---|---|---|---|---|---|---|
| **Cash Inflows** | | | | | | |
| Fort Lowell Property | 708,640 | 729,899 | 751,796 | 774,350 | 797,581 | 821,508 |
| Total Cash Inflows | 708,640 | 729,899 | 751,796 | 774,350 | 797,581 | 821,508 |
| **Cash Outflows** | | | | | | |
| Repairs & Maintenance | 32,136 | 33,100 | 34,093 | 35,116 | 36,169 | 37,254 |
| Electricity | 7,416 | 7,638 | 7,868 | 8,104 | 8,347 | 8,597 |
| Gas | 4,326 | 4,456 | 4,589 | 4,727 | 4,869 | 5,015 |
| Water & Waste Service | 3,555 | 4,074 | 4,196 | 4,322 | 4,452 | 4,585 |
| Trash & Recycle Service | 4,820 | 4,965 | 5,114 | 5,267 | 5,425 | 5,588 |
| Janitorial Services & Supplies | 12,113 | 12,476 | 12,850 | 13,236 | 13,633 | 14,042 |
| Landscaping Maint & Supplies | 8,034 | 8,275 | 8,523 | 8,779 | 9,042 | 9,334 |
| Property Insurance | 13,394 | 13,795 | 14,209 | 14,635 | 15,075 | 15,527 |
| Property Taxes | 152,658 | 157,238 | 161,955 | 166,814 | 171,818 | 176,973 |
| Sales Taxes | 16,658 | 19,218 | 19,794 | 20,388 | 21,000 | 21,630 |
| Lease Commissions | 11,423 | 11,765 | 12,118 | 12,482 | 12,856 | 13,242 |
| Property Management Fee | 9,714 | 10,026 | 10,228 | 10,536 | 10,555 | 11,284 |
| Licenses & Permits | 324 | 334 | 344 | 355 | 365 | 376 |
| Office Supplies | 371 | 382 | 393 | 405 | 417 | 430 |
| Telephone & Internet Charges | 4,697 | 4,838 | 4,983 | 5,132 | 5,286 | 5,445 |
| Postage & Delivery | 371 | 382 | 393 | 405 | 417 | 430 |
| Professional Fees/Costs | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Total Cash Outflows | 296,429 | 304,962 | 313,751 | 322,804 | 332,128 | 341,731 |
| **Operating Cash Flow** | 412,211 | 424,937 | 438,045 | 451,547 | 465,453 | 479,777 |
| Alliance Bank - Class 3 | 400,998 | 400,998 | 400,998 | 400,998 | 400,998 | 400,998 |
| **Net Cash Flow Fort Lowell Property** | 11,213 | 23,939 | 37,047 | 50,549 | 64,455 | 78,779 |
| **Cash Inflows** | | | | | | |
| Tanque Verde Property | 100,818 | 100,818 | - | - | - | - |
| Total Cash Inflows | 100,818 | 100,818 | - | - | - | - |
| **Cash Outflows** | | | | | | |
| Insurance | 1,800 | 1,854 | - | - | - | - |
| Total Cash Outflows | 1,800 | 1,854 | - | - | - | - |
| **Operating Cash Flow** | 99,018 | 98,964 | - | - | - | - |
| National Bank - Class 4 | 100,818 | 100,818 | - | - | - | - |
| **Net Cash Flow Tanque Verde Property** | (1,800) | (1,854) | - | - | - | - |
| **Other Cash Inflows (Outflows)** | | | | | | |
| 69 N. Alvernon Investment | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 |
| Cure of Past Due McMahon Restaurant Rent | | | | | | |
| Tanque Verde Option Funds | (36,000) | (36,000) | (36,000) | (36,000) | (36,000) | (36,000) |
| Cap Ex Reserve | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| Total Cash Inflows (Outflows) | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **Total Operational Cash Flow** | 18,431 | 31,085 | 46,047 | 59,549 | 73,455 | 87,779 |

## McMahon Properties
### January 2015 - December 2020 Cash Flow Projections

| | Year Two | Year Three | Year Four | Year Five | Year Six | Year Seven |
|---|---|---|---|---|---|---|
| Plan Payments: | | | | | | |
| Administrative Claims - Professional | - | - | - | - | - | - |
| Administrative Claims - UST Fees | - | - | - | - | - | - |
| National Bank | - | - | - | - | - | - |
| Priority Claims - Class 2 | - | - | - | - | - | - |
| Real Property Taxes | - | - | - | - | - | - |
| Unsecured Claims - Class 5 | - | - | - | - | - | - |
| Total Plan Payments | (27,928) | (27,928) | (27,928) | (27,928) | (27,928) | (27,928) |
| | | | | | | |
| Cash Balance at Beginning of Month | 208,839 | 199,324 | 202,481 | 220,600 | 252,221 | 297,748 |
| | | | | | | |
| Cash Balance at End of Month | 199,324 | 202,481 | 220,600 | 252,221 | 297,748 | 357,598 |